Bergan, J.
Defendant operates a large cement plant near Albany. These are actions for injunction and damages by neighboring land owners alleging injury to property from dirt, smoke and vibration emanating from the plant. A nuisance has been found after trial, temporary damages have been allowed; but an injunction has been denied.
The public concern with air pollution arising from many sources in industry and in transportation is currently accorded ever wider recognition accompanied by a growing sense of responsibility in State and Federal Governments to control it. Cement plants are obvious sources of air pollution in the neighborhoods where they operate.
But there is now before the court private litigation in which individual property owners have sought specific relief from a single plant operation. The threshold question raised by the division of view on this appeal is whether the court should resolve the litigation between the parties now before it as ; equitably as seems possible; or whether, seeking promotion of the general public welfare, it should channel private litigation i into broad public objectives.
A court performs its essential function when it decides the rights of parties before it. Its decision of private controversies may sometimes greatly affect public issues. Large questions of law are often resolved by the manner in which private litigation is decided. But this is normally an incident to the court’s main function to settle controversy. It is a rare exercise of judicial power to use a decision in private litigation as a pur- ! poseful mechanism to achieve direct public objectives greatly ’beyond the rights and interests before the court.
Effective control of air pollution is a problem presently far from solution even with the full public and financial powers of government. In large measure adequate technical procedures are yet to be developed and some that appear possible may be economically impracticable.
*223 /It seems apparent that the amelioration of air pollution will depend/on technical research in great depth f on a carefully balanced consideration of the economic impact of close regulation; and of the actual effect on public health.- It is likely to require massive public expenditure and to demand more than any local community can accomplish and to depend on regional and interstate controls.
A court should not try to do this on its own as a by-product of private litigation and it seems manifest that the judicial establishment is neither equipped in the limited nature of any judgment it can pronounce nor prepared to lay down and implement an effective policy for the elimination of air pollution. This is an area beyond the circumference of one private lawsuit. " It is a direct responsibility for government and should not thus be undertaken as an incident to solving a dispute between property owners and a single cement plant — one of many—in the Hudson River valley.
The cement making operations of defendant have been found by the court at Special Term to have damaged the nearby properties of plaintiffs in these two actions. That court, as it has been noted, accordingly found defendant maintained a nuisance and this has been affirmed at the Appellate Division. The total damage to plaintiffs’ properties is, however, relatively small in comparison with the value of defendant’s operation and with the consequences of the injunction which plaintiffs seek.
The ground for the denial of injunction, notwithstanding the finding both that there is a nuisance and that plaintiffs have been damaged substantially, is the large disparity in economic consequences of the nuisance and of the injunction. This theory cannot, however, be sustained without overruling a doctrine Avhich has been consistently reaffirmed in several leading cases in this court and which has never been disavowed here, namely that where a nuisance has been found and where there has been any substantial damage shown by the party complaining an injunction will be granted.
The rule in New York has been that such a nuisance will be enjoined although marked disparity be shown in economic consequence between the effect of the injunction and the effect of the nuisance.
*224 The problem of disparity in economic consequence was sharply in focus in Whalen v. Union Bag & Paper Co. (208 N. Y. 1). A pulp mill entailing an investment of more than a million dollars polluted a stream in which plaintiff, who owned a farm, was “ a lower riparian owner The economic loss to plaintiff from this pollution was small. This court, reversing the Appellate Division, reinstated the injunction granted by the Special Term against the argument of the mill owner that in view of ‘ ‘ the slight advantage to plaintiff and the great loss that will be inflicted on defendant ’ ’ an injunction should not be granted (p. 2). “ Such a balancing of injuries cannot be justified by the circumstances of this case ”, Judge Werner noted (p. 4). He continued: “Although the damage to the plaintiff may be slight as compared with the defendant’s expense of abating the condition, that is not a good reason for refusing an injunction ” (p. 5).
Thus the unconditional injunction granted at Special Term was reinstated. The rule laid down in that case, then, is that whenever the damage resulting from a nuisance is found not “ unsubstantial ”, viz., $100 a year, injunction would follow. This states a rule that had been followed in this court with marked consistency (McCarty v. Natural Carbonic Gas Co., 189 N. Y. 40; Strobel v. Kerr Salt Co., 164 N. Y. 303; Campbell v. Seaman, 63 N. Y. 568).
There are cases where injunction has been denied. McCann v. Chasm Power Co. (211 N. Y. 301) is one of them. There, however, the damage shown by plaintiffs was not only unsubstantial, it was non-existent. Plaintiffs owned a rocky bank of the stream in which defendant had raised the level of the water. This had no economic or other adverse consequence to plaintiffs, and thus injunctive relief was denied. Similar is the basis for denial of injunction in Forstmann, v. Joray Holding Co. (244 N. Y. 22) where no benefit to plaintiffs could be seen from the injunction sought (p. 32). Thus if, within Whalen v. Union Bag & Paper Co. (supra) which authoritatively states the rule in New York, the damage to plaintiffs in these present cases from defendant’s cement plant is “not unsubstantial ”, an injunction should follow.
Although the court at Special Term and the Appellate Division held that injunction should be denied, it was found that plain *225 tiffs had been damaged in various specific amounts up to the time of the trial and damages to the respective plaintiffs were awarded for those amounts. The effect of this was, injunction having been denied, plaintiffs could maintain successive actions at law for damages thereafter as further damage was incurred.
The court at Special Term also found the amount of permanent damage attributable to each plaintiff, for the guidance of the parties in the event both sides stipulated to the payment and acceptance of such permanent damage as a settlement of all the controversies among the parties. The total of permanent damages to all plaintiffs thus found was $185,000. This basis of adjustment has not resulted in any stipulation by the parties.
This result at Special Term and at the Appellate Division is a departure from a rule that has become settled; but to follow the rule literally in these cases would be to close down the plant at once. This court is fully agreed to avoid that immediately drastic remedy-'; the difference in view is how best to avoid it.*
One alternative is to grant the injunction but postpone its effect to a specified future date to give opportunity for technical advances to permit defendant to eliminate the nuisance; another is to grant the injunction conditioned on the payment of permanent damages to plaintiffs which would compensate them for the total economic loss to their property present and future caused by defendant’s operations. For reasons which will be developed the court chooses the latter alternative.
If the injunction were to be granted unless within a short period — e.g., 18 months — the nuisance be abated by improved methods, there would be no assurance that any significant technical improvement would occur.
The parties could settle this private litigation at any time if defendant paid enough money and the imminent threat of closing the plant would build up the pressure on defendant. If there were no improved techniques found, there would inevitably be applications to the court at Special Term for extensions of time to perform on showing of good faith efforts to find such techniques.
Moreover, techniques to eliminate dust and other annoying by-products of cement making are unlikely to be developed by *226 , any research the defendant can undertake within any short I period, but will depend on the total resources of the cement í industry Nationwide and throughout the world. The problem is Í universal wherever cement is made.
For obvious reasons the rate of the research is beyond control of defendant. If at the end of 18 months the whole industry has not found a technical .solution a court would be hard put to close down this one cement plant if due regard be given to equitable principles.
On the other hand, to grant the injunction unless defendant pays plaintiffs such permanent damages as may be fixed by the court seems to do justice between the contending parties. All of the attributions of economic loss to the properties on which plaintiffs ’ complaints are based will have beén redressed.
The nuisance complained of by these plaintiffs may have other public or private consequences, but these particular parties are the only ones who have sought remedies and the judgment proposed will fully redress them. The limitation of relief granted is a limitation only within the four corners of these actions and does not foreclose public health or other public agencies from seeking proper relief in a proper court.
It seems reasonable to think that the risk of being required to pay permanent damages to injured property owners by cement plant owners would itself be a reasonable effective spur to research for improved techniques to minimize nuisance.
The power of the court to condition on equitable grounds the continuance of an injunction on the payment of permanent damages seems undoubted. (See, e.g., the alternatives considered in McCarty v. Natural Carbonic Gas Co., supra, as well as Strobel v. Kerr Salt Co., supra.)
The damage base here suggested is consistent with the general rule in those nuisance cases where damages are allowed. ‘ ‘ Where a nuisance is of such a permanent and unabatable character that a single recovery can be had, including the whole damage past and future resulting therefrom, there can be but one recovery” (66 C. J. S., Nuisances, § 140, p. 947). It has been said that permanent damages are allowed where the loss recoverable would obviously be small as compared with the cost of removal of the nuisance (Kentucky-Ohio Gas Co. v. Bowling, 264 Ky. 470, 477).
*227 The present cases and the remedy here proposed are in a number of other respects rather similar to Northern Indiana Public Serv. Co. v. Vesey (210 Ind. 338) decided by the Supreme Court of Indiana. The gases, odors, ammonia and smoke from the Northern Indiana company’s gas plant damaged the nearby Vesey greenhouse operation. An injunction and damages were sought, but an injunction was denied and the relief granted was limited to permanent damages “ present, past, and future ” (p. 371).
Denial of injunction was grounded on a public interest in the operation of the gas plant and on the court’s conclusion “ that less injury would be occasioned by requiring the appellant [Public Service] to pay the appellee [Vesey] all damages suffered by it * *■ * than by enjoining the operation of the gas plant; and that the maintenance and operation of the gas plant should not be enjoined ” (p. 349).
The Indiana Supreme Court opinion continued: ‘ ‘ When the trial court refused injunctive relief to the appellee upon the ground of public interest in the continuance of the gas plant, it properly retained jurisdiction of the case and awarded full compensation to the appellee. This is upon the general equitable principle that equity will give full relief in one action and prevent a multiplicity of suits ” (pp. 353-354).
It was held that in this type of continuing and recurrent nuisance permanent damages were appropriate. See, also, City of Amarillo v. Ware (120 Tex. 456) where recurring overflows from a system of storm sewers were treated as the kind of nuisance for which permanent depreciation of value of affected property would be recoverable.
There is some parallel to the conditioning of an injunction on the payment of permanent damages in the noted ‘ ‘ elevated railway cases ” (Pappenheim v. Metropolitan El. Ry. Co., 128 N. Y. 436, and others which followed). Decisions in these cases were based on the finding that the railways created a nuisance as to adjacent property owners, but in lieu of enjoining their operation, the court allowed permanent damages.
Judge Finch, reviewing these cases in Ferguson v. Village of Hamburg (272 N. Y. 234, 239-240), said: 11 The courts decided that the plaintiffs had a valuable right which was being *228 impaired, but did not grant an absolute injunction or require the railway companies to resort to separate condemnation proceedings. Instead they held that a court of equity could ascertain the damages and grant an injunction which was not to be effective unless the defendant failed to pay the amount fixed as damages for the past and permanent injury inflicted.” (See, also, Lynch v. Metropolitan El. Ry. Co., 129 N. Y. 274; Van Allen v. New York El. R. R. Co., 144 N. Y. 174; Cox v. City of New York, 265 N. Y. 411, and similarly, Westphal v. City of New York, 177 N. Y. 140.)
Thus it seems fair to both sides to grant permanent damages to plaintiffs which will terminate this private litigation. The theory of damage is the ‘ ‘ servitude on land ’ ’ of plaintiffs imposed by defendant’s nuisance. (See United States v. Causby, 328 U. S. 256, 261, 262, 267, where the term “servitude” addressed to the land was used by Justice Douglas relating to the effect of airplane noise on property near an airport.)
The judgment, by allowance of permanent damages imposing a servitude on land, which is the basis of the actions, would preclude future recovery by plaintiffs or their grantees (see Northern Indiana Public Serv. Co. v. Vesey, supra, p. 351).
This should be placed beyond debate by a provision of the judgment that the payment by defendant and the acceptance by plaintiffs of permanent damages found by the court shall be in compensation for a servitude on the land.
Although the Trial Term has found permanent damages as a possible basis of settlement of the litigation, on remission the court should be entirely free to re-examine this subject. It may again find the permanent damage already found; or make new findings.
The orders should be reversed, without costs, and the cases remitted to Supreme Court, Albany County to grant an injunction which shall be vacated upon payment by defendant of such amounts of permanent damage to the respective plaintiffs as shall for this purpose be determined by the court.

 Respondent’s investment in the plant is in excess of $45,000,000. There are over 300 people employed there.