158

LITTLE JOSEPH REALTY, INC., Appellant, v TOWN OF BABYLON et al., Respondents. (Action No. 1) LITTLE JOSEPH REALTY, INC., Appellant, v TOWN OF BABYLON et al., Respondents. (Action No. 2)

Second Department, February 2, 1976

*Bennett E. Aron* for appellant.

*Joseph F. Klein (Patrick J. Barton* of counsel), for Town of Babylon and others, respondents.

*Speno, Goldberg, Moore, Margules & Corcoran (Max Margules* of counsel), for J. D. Posillico, Inc. and another, respondents.

MARGETT, J. In action No. 1 the plaintiff seeks to permanently enjoin (1) the defendants J. D. Posillico, Inc. (Posillico) and Posillico Bros. Asphalt Co., Inc. (Posillico Asphalt) from constructing and operating an asphalt plant in violation of the Building Zone Ordinance of the Town of Babylon (the Town) and (2) the Town from permitting such construction and operation. In Action No. 2 the plaintiff seeks, *inter alia,* a declaration that a certain amendment to section 15-8 of the Town's Building Zone Ordinance is illegal and void in that it was adopted after the commencement of Action No. 1, in order to defeat that action, and not to promote the general welfare of the Town.

The plaintiff owns approximately eight acres of land which extend northerly from the Long Island Rail Road to Sherwood Avenue in Farmingdale, Suffolk County. It is improved with three one-story industrial buildings occupied by its tenants. The plaintiff also uses the property to manufacture and store concrete cesspools. Adjoining the plaintiff's land to the west is a 19.2-acre parcel formerly owned by Sully Concrete Materials Corp. (Sully), which had been used by Sully for a sand and gravel screening operation. Both parcels are in the "G" district (light industry), which prohibits asphalt manufacture or refining.

In January, 1969 Sully petitioned to change the zoning district of its parcel to an "H" district (heavy industry) in order to permit the erection and maintenance of an asphalt plant thereon. Sully had agreed to sell its property to Posillico if the change were permitted. After a public hearing, the petition was denied on July 1, 1969.

Thereafter, the Town took steps to acquire the Sully property for use as a sanitary landfill site; a public hearing was held on May 5, 1970; no one appeared in opposition. Sully then offered to sell the property, including the equipment and screening plant thereon, to the Town for $1,160,000, approximately the value set forth in the Town's appraisal report; this offer was accepted; title closed on July 24, 1970.

By letter dated July 29, 1970, Posillico presented a proposal to the town board whereby it would lease the easterly 14 acres of the Town's newly acquired property; excavate the northerly 7 acres thereof (Parcel A) so that it could be used as a sanitary landfill; pay a specified sum per cubic yeard for the sand; and build an asphalt plant which would make use of the excavated sand and gravel on the southerly 7 acres thereof (Parcel B). After discussion with the town board, Posillico presented a revised proposal by letter dated August 31, 1970.

Thereafter, the Town advertised for bids for a lease of the easterly 14 acres of this site; the specifications provided, *inter alia,* that (1) "the primary purpose and use * * * is for a landfill disposal site"; (2) the successful bidder was "to excavate approximately seven (7) acres of land described as Parcel A"; (3) the excavation was to be to a minimum depth of 35 feet below water level; (4) three acres were to be excavated during the first year, three during the second, and one during the third; (5) the mined material would be the property of the successful bidder, whose responsibility it would be to dispose of it; (6) the other seven acres (Parcel B) were simultaneously offered for lease and "all bidders must submit with his bid * * * a complete outline showing the intended use for Parcel B"; (7) "should a structure be intended, the successful bidder must submit the size of structure and purpose. All structures subject to Town of Babylon Building Codes"; (8) the lease term was "up to 15 years"; and (9) questions as to the specifications were invited. It is to be noted that there was no mention that use of Parcel B for an asphalt plant (or for any other purpose inconsistent with the applicable zoning law) would be considered.

Two bids were received. The unsuccessful bidder submitted a bid limited to the excavation of Parcel A. Posillico, the successful bidder, in addition to agreeing to excavate as specified, requested a 15-year lease of Parcel B; its total bid was $538,000, to be paid over the 15-year period. As to "Intended Use", it stated, in part: "We intend to erect a modern asphalt plant facility and related equipment on Parcel 'B' "

On October 20, 1970 the town board adopted a resolution, subject to permissive referendum, awarding the bid to Posillico and authorizing the supervisor to enter into a lease with it in accordance with the bid. No petition for a permissive referendum was received. On December 2, 1970, the Town entered into a lease with Posillico, whose terms were substantially as those contained in the successful bid, but which added the right of ingress and egress over a 50-foot roadway and the right to assign the lease to a wholly owned corporation, with Posillico remaining liable thereon. (The lease was assigned to Posillico Asphalt.) The first provision of the lease stated that the Town "covenants and represents that the subject property may be legally used for the use contemplated herein under the Building Zone Ordinance of the Town of Babylon." Paragraph 8 thereof stated that "the contemplated use of Parcel B by * * * [Posillico], that of an asphalt manufacturing plant, shall be in compliance with all federal, state and local laws, including but not limited to present and future antipollution laws."

The plaintiff commenced Action No. 1 on April 1, 1971. The complaint alleges a violation of the zoning ordinance.[1] The plaintiff moved for a preliminary injunction and the defendants cross-moved to dismiss the complaint. Both the motion and cross motion were denied; that order was affirmed by this court in January, 1972 (Little Joseph Realty v Town of Babylon, 38 AD2d 795).

Meanwhile, on April 12, 1971 and pursuant to the direction of the town board, the Building Inspector issued a permit for the asphalt plant and, on August 11, 1971, he issued a certificate of occupancy for the completed plant. The plant has been in operation since then. On April 28, 1971 the town board, after a public hearing, adopted section 15-8 as an amendment to the Building Zone Ordinance. It states as

---

1. It is to be noted that neither the complaint nor the plaintiff's proof at the trial claimed a nuisance.

follows: "This chapter [chapter 15 of the Building Zone Ordinance] shall not apply to or affect any building, structure or premises owned by the Town of Babylon or any building or structure erected or standing on premises owned by the Town of Babylon. This chapter shall not apply to or affect any building, structure or premises which shall or may be erected, altered or used for any municipal purposes permitted by law, and any building, structure or premises may be erected, altered or used for any such purpose in any district by resolution of the Town Board, subject to such conditions and safeguards as the Town Board may deem appropriate in each particular case."[2]

Action No. 2 was commenced on June 22, 1971 to declare this amendment illegal and void. The actions were tried together. The Special Term awarded judgment in favor of the defendants upon its dismissal of the complaints at the close of trial; the plaintiff appeals from the said judgment.

At the trial, witnesses for the plaintiff testified that there was a great deal of dust and soot in the steam emitted by the plant's smoke stacks, that the dust and soot settled in large amounts on buildings in the surrounding area, including the plaintiff's buildings, and that one of the plaintiff's tenants failed to renew its lease because of this. One of the plaintiff's real estate witnesses testified that, if the plant were removed the value of the plaintiff's land would increase by 10%, despite its proximity to the sanitary landfill. On the other hand, the witnesses for the defendants Posillico testified that the smoke and dust had no effect on the value of the neighboring industrial property.

Our review of the evidence convinces us that indeed there were damages suffered by the plaintiff because of the incursion of great quantities of dust and soot from Posillico's plant, wholly apart from the dust and soil which invaded the plaintiff's premises concomitant with the excavation of the landfill; those damages were sufficient to grant the plaintiff the threshold right to sue for injunction (cf. *Whalen v Union Bag &*

---

2. The defendant Town does not deny that this amendment was enacted because of the pendency of Action No. 1. However, it was unnecessary because section 4 of article XVII of the Town's Building Zone Ordinance was in effect at the time of the lease; the new section merely added the word "structure". Since the contemplated asphalt plant was a "building" (a word contained in the pre-existent ordinance) the inclusion of the word "structure" added nothing. The Town Supervisor testified that the town board had not been aware that the pre-existent ordinance was on the books.

*Paper Co.,* 208 NY 1; *McCarty v Natural Carbonic Gas Co.,* 189 NY 40).

Even apart from the afore-mentioned ordinances, the law is well settled that "a village is not subject to zoning restrictions in the performance of its governmental, as distinguished from its corporate or proprietary, activities" and that "a village is free to locate its governmental operations in any district it chooses" *(Nehrbas v Incorporated Vil. of Lloyd Harbor,* 2 NY2d 190, 193, 194). It is equally established that the disposition of rubbish and refuse "must today be stamped a governmental function" *(id.,* p 195). It follows that excavation to create a sanitary landfill is also a governmental function, which does not lose its characterization merely because the excavator, hired by the Town, is a private business entity.

Clearly, an asphalt manufacturer would offer more for acquisition of large quantities of excavated sand and gravel if it could process this material *in situ* than if the material had to be transported elsewhere. The Special Term held that this resulted in a "great financial benefit to the Town"; that the Town "acted upon a golden opportunity to obtain $538,000 in rent over a period of 15 years to recoup a substantial part of the cost of acquiring the land"; that "the incidental private benefit to Posillico, to say nothing of the great financial benefit to the Town, cannot serve as a basis for invalidation"; and that the lease of Parcel B for use as an asphalt plant constituted an "incidental use of land in connection with [garbage and refuse disposal]".

In support of its holding, the Special Term cited *Matter of Ocean Beach Ferry Corp. v Incorporated Vil. of Ocean Beach* (276 App Div 920), where the court upheld a commercial ferry lease on government-owned land on the ground that there was public necessity for access to the mainland, and *Murphy v Erie County* (28 NY2d 80), where a lease and agreement to operate a county-owned stadium were upheld because of the benefit to the public in providing recreation, cultural activities and the viewing of sports events. We disagree with the Special Term.

Those cases are distinguished from this one in that they did not involve the attempted transfer to a private business venture of the governmental mantle of exemption from the zoning laws. The manufacture of asphalt for sale to, and use by, anyone other than the Town or its constituent agencies is not the exercise of a governmental activity. The "golden

opportunity" involved a sale of a governmental indulgence, something special to the municipality alone in the exercise of its governmental activities, to the injury of the adjoining landowner. Further, having so recently refused the application of the predecessor owner for a zoning change to permit construction of an asphalt plant, it ill becomes the Town to claim (as it does) that the asphalt plant was compatible with the present industrial uses in the "G" district.

A municipality may not engage in the business of selling its zoning exemptions to the highest bidder. Since it itself is not exempt where the contemplated activity is proprietary, it cannot immunize such activity from zoning law restrictions by transfer to a private business entity. It cannot assign what it does not have. The fact is, however, that the plant has been in operation for 4 years of its contemplated 15-year life. The construction cost of the plant was approximately $1,000,000 and it has a capacity of 1,800 tons of asphalt per day. Mr. Posillico testified that a vast amount of asphalt (3,000,000 tons) was required by the Southwest Sewer District; that his corporation holds 5 of the 12 or 13 contracts for the supply of asphalt to that project; and that 62% of the production from this plant is used on that sewer project. If this plant is enjoined from operation, Posillico would sustain a tremendous loss in profits (as well as its loss on construction of the plant), in that it would have to erect portable plants at a much greater expense. Undoubtedly, Posillico would seek to recover these huge damages from the Town under the covenant in its lease that the property "may be legally used for the use contemplated herein".

Further, while the defendants deny undue emission, Mr. Posillico agreed with the testimony of one of the plaintiff's expert witnesses that the installation of a baghouse filter (at an alleged cost of approximately $50,000, as testified to by plaintiff's witness, or $100,000, as testified to by Mr. Posillico) in place of the existent "scrubber" would very substantially reduce the emission of dust particles, and Mr. Posillico testified that it would be installed in the winter of 1974-1975.

The plaintiff's real estate expert testified that the removal of the plant would result in an increase in the value of the plaintiff's land by 10%, or $7,000 to $10,000 an acre (i.e., a maximum of approximately $80,000). The claimed damages presumably would be substantially decreased if the filter were installed and found to be effective.

Under the holding of *Boomer v Atlantic Cement Co.* (26 NY2d 219), we are constrained to consider the large disparity in the economic consequences of the granting of an injunction. That case involved air pollution which was found to be a nuisance. However, we see no difference in principle between that and a finding of a zoning violation where the plaintiff sues to enjoin because of its actual damages. *Boomer* overruled the prior rule of law that "whenever the damage resulting from a nuisance is found not 'unsubstantial', viz., $100 a year, injunction would follow" *(id.,* p 224). It held, instead, that under the facts of that case, the proper rule was "to grant the injunction conditioned on the payment of permanent damages to plaintiffs which would compensate them for the total economic loss to their property present and future caused by defendant's operations" *(id.,* p 225).

We find that the facts herein, including the disparity between the plaintiff's damages and the economic consequences of an injunction, are sufficiently similar to the situation in *Boomer (supra)* so as to mandate the application of the rule of law, as well as the remedy, set forth therein, as modified by the facts shown herein. Accordingly, we modify the judgment by reversing the dismissal of the complaint in Action No. 1, on the law and the facts, by holding that the defendants therein are liable to the plaintiff in damages, and we remand that action to the Special Term for the entry of an interlocutory judgment and for further proceedings in accordance herewith. The operation of the asphalt plant shall be enjoined unless a filter (of the type described by the witnesses for the parties) is installed within 120 days after the entry of the appropriate interlocutory judgment in Action No. 1 by the Special Term. In any event, the defendants in said action shall be liable to the plaintiff for damages, the amount of which shall be determined as follows, after a hearing, at the Special Term: (1) if the filter is not installed within said 120 days, damages shall be awarded for the period up to the date of the said damage hearing; (2) if the filter is installed within the said 120 days, the damages sustained by the plaintiff shall take into account the diminution of the value of the plaintiff's premises for the entire 15-year period of the lease, the loss of rentals and the extent to which damages will be mitigated by installation of the filter and such other steps as may have been taken to further reduce the emission of dust and soot.

We affirm as to dismissal of Action No. 2. The 1971 amend-

ment added nothing of relevant significance. As the issue of the legality of the amendment is not relevant to the disposition of this action, the plaintiff is not entitled to a declaration with respect thereto (cf. *Lanza v Wagner,* 11 NY2d 317, 334).

The parties are further granted leave to apply to the Special Term in the future for such other relief as may be appropriate, at the foot of the interlocutory judgment or final judgment to be entered herein.

RABIN, Acting P.J., MARTUSCELLO and SHAPIRO JJ., concur with MARGETT J.; LATHAM, J., concurs as to the affirmance of the dismissal of the complaint in Action No. 2, but otherwise dissents and votes to affirm as to the dismissal of the complaint in Action No. 1, with the following memorandum: I am in agreement with the views expressed in the opinion of Mr. Justice LIPETZ at Special Term, and agree that the actions of the defendant Town were proper and legal in that temporary maintenance of the asphalt plant was merely an incidental use of land in connection with the undoubtedly proper governmental function of refuse disposal. Certainly, the inhabitants of the Town were greatly benefited. Further, as found by Mr. Justice LIPETZ, plaintiff failed to prove irreparable injury.

Judgment of the Supreme Court, Suffolk County, entered February 20, 1975, modified, on the law and the facts, by deleting therefrom the words "each of the above entitled actions" and by substituting therefor "the second above-entitled action". As so modified, judgment affirmed, with costs to plaintiff jointly against respondents appearing separately and filing separate briefs. Action No. 1 is severed and said action is remanded to Special Term for the purposes of (1) entry of an interlocutory judgment adjudging defendants therein liable to plaintiff, which interlocutory judgment shall also provide that the operation of the asphalt plant is enjoined unless a filter (of the type described by the witnesses for the parties) is installed within 120 days after entry of said interlocutory judgment and (2) the holding of a hearing as to the issue of damages in accordance with the opinion of Mr. Justice MARGETT herein. The parties are granted leave to apply to Special Term in the future for such other relief as may be appropriate, at the foot of the interlocutory judgment or final judgment to be entered herein.