Fuchsberg, J.
This action was brought against the Town of Babylon and the defendants Posillico (J. D. Posillico, Inc., and its wholly owned subsidiary, Posillico Bros. Asphalt Co., Inc.) to enjoin the construction and operation of an asphalt plant in violation of the town’s zoning law. The plaintiff, Little Joseph Realty, Inc., is an adjoining property owner.
These salient facts are undisputed: Little Joseph owns approximately eight acres of land improved by buildings in *740 which it leases space to industrial tenants. Sully Concrete Materials Corporation owned an adjoining 19 lá acre parcel on which it conducted a sand and gravel mining and screening business. Both parcels are located in the town’s "G” Industrial District (light industry). Sully petitioned to downzone its parcel to an "H” Industrial District (heavy industry) so as to permit it to construct and maintain an asphalt plant, a prohibited use in "G” district; after a public hearing, the application was denied. The town then took steps to acquire Sully’s land for use as a sanitary landfill site for the deposit of selected refuse; Sully thereupon sold the property to the town. Immediately thereafter, Posillico presented a proposal to the town board to lease 14 acres of the newly acquired property; on 7 acres it planned to build an asphalt plant and on the other 7 to excavate sand for its use in its manufacture of asphalt. This led to the board’s adoption of a resolution authorizing the town supervisor to enter into a 15-year lease and an excavation contract with Posillico; no petition for a permissive referendum having been received, he did so.
After a trial on the merits, Special Term dismissed the complaint, holding that the asphalt plant was merely incidental to a governmental use of the land for waste disposal and that therefore the zoning ordinance was not a bar to its "temporary maintenance”. It held too that, in any event, plaintiff had suffered no special damage or irreparable harm because its property "has not depreciated in value”.
The Appellate Division, weighing the facts differently, as it is empowered to do (CPLR 5501, subd [c]), after first finding that the invasion of Little Joseph’s property by "great quantities of dust and soot from Posillico’s plant”, which by then was in full operation, constituted sufficient damage to entitle it to "the threshold right to sue for [an] injunction” (51 AD2d, at p 162), went on to decide that the asphalt plant in this case did not enjoy exemption from the zoning ordinance. Upon the basis of proof that the plant had been expensive to construct, that the installation of a specified filter would substantially reduce the emission of dust and that a disparity existed between plaintiff’s damages and the larger economic consequences of an injunction, it then directed that an injunction, to be issued pursuant to its order of modification of the judgment of dismissal, be conditioned upon a failure to install the filter. In doing so, it expressly adapted to the options available in private nuisance under our decision in Boomer v *741 Atlantic Cement Co. (26 NY2d 219). It further directed a remand to Special Term for a hearing for the determination of damages, ordering, however, that, if the filter was installed, "the damages sustained by the plaintiff shall take into account the diminution of the value of the plaintiff’s premises for the entire 15-year period of the lease, the loss of rentals and the extent to which damages will be mitigated by installation of the filter and such other steps as may have been taken to further reduce the emission of dust and soot” (51 AD2d, at p 165). (We are advised that the filter has been duly installed.)
Posillico and the town now appeal by leave of the Appellate Division, which certifies to us the broad question as to whether its order was properly made. Little Joseph did not seek leave to cross appeal. In answering the certified question we touch on three areas: (1) plaintiff’s standing to sue, (2) whether the Appellate Division had a right to find that the operation of the asphalt plant is under the circumstances in this case an activity of a proprietary rather than governmental nature and (3) the appropriateness of the relief granted.
Standing need not detain us long. The town’s primary challenge to the plaintiff’s right to maintain this action relies on subdivision 2 of section 268 of the Town Law. That statute, which vests power to enjoin zoning violations in town authorities, provides that, if they fail or refuse to do so after written request by a resident taxpayer of the town, "any three taxpayers * * * who are jointly or severally aggrieved by such violation, may institute such appropriate action or proceeding in like manner as such local officer, board or body of the town is authorized to do.” Obviously intended to create an avenue for direct action by which resident taxpayers, acting in concert, may overcome official lassitude or nonfeasance in the enforcement of zoning laws, this provision is hardly to be construed as a diminution of the right of one who suffers damage beyond general inconvenience to the public at large to take legal action on his own (Armstrong v Gibson & Cushman, 202 Misc 399, app dsmd 280 App Div 939; Slevin v Long Is. Jewish Med. Center, 66 Misc 2d 312, 314-315 [Harnett, J.]).
That right is well recognized. "The provision that an official of the village shall enforce the zoning ordinance does not prevent a private property owner who suffers special damages from maintaining an action” (Marcus v Village of Mamaroneck, 283 NY 325, 333), and thereby seek to enjoin the continuance of the violation and obtain damages (Rice v Van *742 Vranken, 132 Misc 82, affd 225 App Div 179, affd 255 NY 541; cf. Cord Meyer Dev. Co. v Bell Bay Drugs, 20 NY2d 211, 216-217). In doing so, the private property owner is pursuing more than a civic interest in law enforcement; he is vindicating a discrete, separate identifiable interest of his own (2 Anderson, New York Zoning Law and Practice, § 23.07, p 228; Note, The Injunction—A Method of Zoning Enforcement, 15 Syracuse L Rev 546, 549).
Turning then to the relationship between the governmental vis-á-vis proprietary function dichotomy and the town’s obligation to comply with zoning regulations, the general rule is equally clear: A local government may carry out its governmental operations without regard to zoning restrictions, but it is subject to the same restrictions that are imposed on a nongovernmental landowner when it acts in a proprietary capacity (Nehrbas v Incorporated Vil. of Lloyd Harbor, 2 NY2d 190, 193 [Fuld, J.]).
Granted that the legal classification of a particular municipal activity as governmental or proprietary is, in this transitional age, subject to change with time and circumstance, the operation of a landfill "must today be stamped a governmental function” (Nehrbas, p 195) and even the manufacture of asphalt, as for public road building, may very well be. But, in the case now before us, the plant did not manufacture asphalt for use by, or for sale to, the town or its constituent agencies. It was operated solely by and for the commercial benefit of Posillico as a private entrepreneur. The lease, therefore, could not serve to clothe Posillico with immunity from the zoning laws (see, e.g., Carroll v Board of Adjustment of Jersey City, 15 NJ Super 363; Zoning, Governmental Projects, Ann., 61 ALR2d 970, 972; cf. Matter of County of Suffolk, 48 Misc 2d 39, 42 [Munder, J.]; 2 Rathkopf, Law of Zoning & Planning, p 53-16 [1975 Supp, p 267]).
Moreover, there is much in the record to suggest that the town’s lease to Posillico was not merely a transient or incidental adjunct to its own municipal sanitary landfill program. To be sure, 15 years is not an eon, but it is not an inconsequential period in the duration of a zoning imposition either. And the percentage of the entire parcel devoted to the asphalt plant here was a substantial part of the whole.
Since this case is here only on a certified question, we *743 cannot now review the Appellate Division’s finding of fact[1] on the basis of which it apparently concluded that the town, in the very leasing itself, was engaged in the performance of an act proprietary in character when it thus entered into the business transaction which resulted in the private occupancy of this property for a private purpose. But we do observe that the record, among other things, contains the following relevant additional information on that issue:
Posillico, it developed at trial, had for years been eager to locate an asphalt plant on this parcel, with its built-in supply of sand as a raw material. In fact, it had entered into an agreement with Sully that, if the latter obtained the zoning amendment it sought, it would sell the property to Posillico. When shortly thereafter the town acquired the property, it was only a matter of days before the town board was engaged in exploratory conversations with Posillico; this was at a time not only long before the issuance of the invitation for the public bidding which preceded the making of the ultimate lease and excavation agreement, but long before the specifications for such bidding were even formulated. When drawn, the specifications did not refer to an asphalt plant; that appeared as an additional and, as it eventuated, distinguishing feature of the Posillico bid only. For Posillico’s special benefit, the town also later included an easement for a driveway over other town property, an advantage absent from the specifications on which bidders would be expected to act. The town’s supervisor, a former member of its board of zoning appeals, in his testimony characterized the inclusion of a provision for an asphalt plant to be built by Posillico as an "oversight”, while a town councilwoman testified that the town’s primary motive for entering into the arrangement was the large revenue which would inure to its benefit over the term of the lease, i.e., $538,000 in rental plus a stipulated amount for each cubic foot of sand mined. All these, Little Joseph argued, are telltale traces of a dominant use for Posillico’s private purposes.
Focusing our attention now on the relief which the Appellate Division granted, the striking thing is that, by permitting the defendants to avoid enjoinment of the operation of the asphalt plant simply by the abatement of those aspects of the *744 use which were most offensive to the plaintiff and its payment of the award of permanent damages to be fixed on remand, the defendants’ continued violation of the zoning ordinance has received judicial countenance. The conditional injunction, however well intentioned, in actual operation thus becomes merely a way of reducing damage. And defendants are thereby in effect buying the right to violate the law, the plaintiff being relegated to monetary damages somewhat akin to those to which it would be entitled under principles of eminent domain. Such a result runs counter to firmly established law and sound public policy.
As succinctly stated by Mr. Justice Eager in Lesron Jr., Inc. v Feinberg (13 AD2d 90, 95): "It is settled beyond doubt that an action for injunctive relief is the appropriate remedy of an aggrieved property owner who seeks to bar the erection of a structure on adjoining or nearby premises in violation of express zoning regulations [citations omitted].” That principle was reaffirmed in Cord Meyer Dev. Co. v Bell Bay Drugs (20 NY2d 211, 216-217, supra), where Judge Van Voorhis, writing for this court, approvingly quoted the Appellate Division’s observation that "one who suffers special damages as a result of a violation of zoning ordinance may obtain an injunction to prevent its continuance and damages [citations omitted]” (25 AD2d 744).
Boomer v Atlantic Cement Co. (26 NY2d 219, supra) did not change that rule. First and foremost, it should be noted that no zoning violation, or for that matter, the violation of any other statute, was involved in that case. The action there was one to enjoin the continued commission of a nuisance in the operation of a cement plant which apparently offended no statutory edict, but tortiously imposed upon the plaintiff’s property.
The law of nuisance and that of zoning both relate to the use of property, but they each protect a different interest. So a use which fully complies with a zoning ordinance may still be enjoined as a nuisance (Sweet v Campbell, 282 NY 146; but see Bove v Donner-Hanna Coke Corp., 236 App Div 37), albeit "the plaintiff assumes a heavy burden of proof’ (2 Anderson, New York Zoning Law and Practice, § 23.03).
Nuisance is based upon the maxim that "a man shall not use his property so as to harm another” (Joyce, Law of Nuisance, p 45; see, also, Copart Inds., v Consolidated Edison Co., 41 NY2d 564). It traditionally required that, after a *745 balancing of risk-utility considerations, the gravity of the harm to a plaintiff be found to outweigh the social usefulness of a defendant’s activity. (Prosser, Law of Torts [4th ed], p 581; see, also, Restatement, Torts 2d [Tent Draft No. 18], § 826, pp 3-4; Wade, Environemental Protection, The Common Law of Nuisance, 8 Forum 165, 171). On that basis, it was logical in Boomer, where the adverse economic effects of a permanent injunction far outweighed the loss plaintiffs there would suffer, to limit the relief to monetary damages as compensation for the "servitude” which had been imposed upon them (Boomer v Atlantic Cement Co., supra, p 228).
Zoning is far more comprehensive. Its design is, on a planned basis, to serve as "a vital tool for maintaining a civilized form of existence” for the benefit and welfare of an entire community (Udell v Haas, 21 NY2d 463, 469; see, also, Comment, Zoning and the Law of Nuisance, 29 Ford L Rev 749, 750-751; Comment, Zoning Ordinances and Common-Law Nuisance, 16 Syracuse L Rev 860). Its provisions must be enforced with these goals in mind. It follows that, when a continuing use flies in the face of a valid zoning restriction, it must, subject to the existence of any appropriate equitable defenses, be enjoined unconditionally (cf. Matter of B & G Constr. Corp. v Board of Appeals, 309 NY 730; Marcus v Village of Mamaroneck, 283 NY 325, supra).
Consequently, however appropriate the remedy fashioned by the Appellate Division might be in resolving a private nuisance case, it is inappropriate here. In private nuisance, there is frequently a need to resolve a dispute between a plaintiff and a defendant over conflicting though valid uses of land. In such a case, the remedial options delineated in Boomer provide means by which courts can adjust such competing uses with a view towards maximizing the social value of each.
On the other hand, when it has been established that a defendant violates a valid zoning ordinance, there is no need for judicial accommodation of the defendant’s use to that of the plaintiff. For a court to do so would be for it to usurp the legislative function. Specifically, in the case now before us, if the defendants can continue the unlawful use of the property after complying with the relief granted on remand, the trial court’s judgment would have worked to rezone the land with conditions notwithstanding the fact that the power to do so is reserved to the town board alone (National Land & Inv. Corp. v Easttown Twp. Bd. of Adjustment, 419 Pa 504, 521-522).
*746 This is not to say that risk-utility considerations have not entered into the adoption of a zoning law’s restriction on use. It is rather that presumptively they have already been weighed and disposed of by the Legislature which enacted them (see Maldini v Ambro, 36 NY2d 481, 484).
From all this, it would appear that we should modify the order of the Appellate Division and grant the permanent unconditional injunction originally sought by the plaintiff. However, since plaintiff has not appealed to this court, we are without power to grant such affirmative relief (People v Consolidated Edison Co., 34 NY2d 646, 648; Rye v Public Serv. Mut. Ins. Co., 34 NY2d 470, 474). Nevertheless, in view of the indorsement at the foot of the interlocutory judgment entered upon the order of the Appellate Division in this case of leave for it to apply to Special Term in the future for such further relief as may be appropriate, plaintiff may, if so advised, reassert its application for a permanent injunction at the time of the damages hearing ordered by the remand.[2]
Accordingly, despite our indicated disagreement with the appropriateness of the relief granted by the Appellate Division, we affirm the order appealed from and, on that basis, the answer to the certified question must be in the affirmative.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Wachtler and Cooke concur.
Order affirmed, without costs. Question certified answered in the affirmative.

. (Cohen and Karger, Powers of the New York Court of Appeals, § 86, pp 368-369; cf. Cord Meyer Dev. Co. v Bell Bay Drugs, 20 NY2d 211, supra, relied on by the town, where the appellant stipulated for judgment absolute in the event of an affirmance.)

. The Appellate Division did not make it entirely clear as to what permanent damage the trial court could have found if the filter had not been installed and the absolute injunction had issued. Presumably, if the defendants were enjoined unconditionally, the plaintiff would suffer no permanent injury requiring compensation from that point on. Perhaps the Appellate Division felt that the trial court could find some aspects of defendants’ use unabatable and would permit defendant to continue that aspect only after paying the plaintiff permanent damages. In view of our holding in this case we need not consider whether such a novel application of Boomer would be appropriate in the kind of case in which its options are available.