■ ATLANTIC CEMENT Co., INC., Respondent, v FIDELITY & CASUALTY Co. OF NEW YORK, Appellant, et al., Defendant.— Order, Supreme Court, New York County (Irma Vidal Santaella, J.), entered on or about October 10, 1988, which, *inter alia,* denied the motion of defendant, the Fidelity & Casualty Co. of New York (Fidelity), to eliminate certain limiting language from declarations of easement, is unanimously modified, on the law, on the facts, and, in the exercise of discretion, to the extent of granting defendant Fidelity's motion, insofar as to direct plaintiff to deliver quitclaim deeds, with declarations of easement which exclude the language "for any other purpose" in paragraph 1, and "it being understood that the easement granted and declared hereby may render the Premises uninhabitable, unmarketable and not usable for any purpose" in paragraph 3, and except as thus modified, otherwise affirmed, without costs.

Before beginning the operation, in September 1962, of its

$45 million cement plant located in Ravena, New York, Atlantic Cement Co., Inc. (Atlantic) obtained from the Fidelity & Casualty Co. of New York (Fidelity) a comprehensive general liability policy, which provided coverage in the amounts of $300,000/$1,000,000. Subsequently, in 1964, Atlantic obtained virtually identical liability coverage from the Travelers Indemnity Company (Travelers).

In October 1964, eight property owners (plaintiffs) commenced, in the Supreme Court, Albany County, separate actions against Atlantic for damages and injunctive relief. Plaintiffs, who owned businesses and homes in the vicinity of Atlantic's cement plant, in their complaints alleged, in substance, that their respective properties had been damaged as a result of smoke and dust, as well as noise and vibrations, emanating from that plant. Thereafter, Atlantic requested its insurance carriers, Fidelity and Travelers, to defend it in those actions, and those carriers declined.

Following the joinder of issue, trial, and an appeal to the Appellate Division, the Court of Appeals, in *Boomer v Atlantic Cement Co.* (26 NY2d 219 [1970]), upheld the trial court finding that the cement plant was a nuisance, but, after balancing the equities, decided injunctive relief was not justified, so long as defendant Atlantic compensated plaintiffs for past, present, and future economic damages and, in return, a private economic servitude would be imposed on plaintiffs' land. Thereafter, seven of the eight plaintiffs settled their claims with Atlantic for $466,250, and by these settlements, Atlantic acquired a fee interest in those parcels of property.

After that settlement, in 1975 Atlantic commenced, in the Supreme Court, New York County, an action against Fidelity and Travelers to recover from them the funds it had expended to defend and settle the litigation, mentioned *supra.* Issue was joined and, following a trial court judgment in favor of the defendant insurers, we reversed *(Atlantic Cement Co. v Fidelity & Cas. Co.,* 91 AD2d 412 [1983]). In our opinion, we held that Atlantic was covered by the policies issued by the two carriers, and remanded the matter "for a new trial limited to the issue of the reasonableness of the settlements made by Atlantic in the lawsuits brought against it by the abutting landowner claimants" *(Atlantic Cement Co. v Fidelity & Cas. Co., supra,* at 420).

Subsequently, on November 22, 1983, in the Supreme Court, New York County (Alfred M. Ascione, J.), by a stipulation of settlement (Stipulation), Atlantic and Fidelity settled the in-

stant action. The terms of this Stipulation provide, *inter alia,* that Fidelity would pay Atlantic $250,000 in exchange for the opportunity to select a specified portion of the parcels of property acquired by Atlantic when it settled with the seven landowners, mentioned *supra.* Further, the Stipulation provided, in substance, that concerning the property selected by Fidelity, Atlantic would deliver to Fidelity quitclaim deeds, together with declarations of easement, which would be executed by Fidelity.

During the next several years, although Fidelity paid Atlantic $250,000 and made its selection of property, the parties were unable to agree on the language to be contained in the declarations of easement.

In order to resolve this impasse, Fidelity moved for an order which, *inter alia,* would direct Atlantic to deliver quitclaim deeds, with declarations of easement, which will contain language that will protect Atlantic and not render the property obtained by Fidelity unmarketable. Atlantic opposed, and the trial court (Irma Vidal Santaella, J.) denied that motion. Fidelity appeals.

It is well-established law that a stipulation of settlement is enforceable as a contract *(Muller v City of New York,* 113 AD2d 877 [1985]).

After our review of the record, we find that while the terms of the Stipulation require that the declaration of easement contain language which subjects the property to the private economic servitude contemplated by the Court of Appeals in *Boomer v Atlantic Cement Co. (supra),* the Stipulation does not require that title to such property be made unmarketable.

Based upon this analysis, accordingly, we modify the order, entered on or about October 10, 1988, to the extent of granting defendant Fidelity's motion insofar as to direct plaintiff to deliver quitclaim deeds, with declarations of easement, which exclude the language "for any other purpose" in paragraph 1 and the language "it being understood that the easement granted and declared hereby may render the Premises uninhabitable, unmarketable and not useable for any purpose". Concur—Sullivan, J. P., Ross, Milonas, Ellerin and Rubin, JJ.