No. 43,237

In the Matter of the Estate of Charles T. Roberts, Deceased. (ALBERT H. ROBERTS, *Appellant* and *Cross Appellee*, v. HELEN ROBERTS MAY, MARLENE ROBERTS, Natural Guardian of Kim Leslie Roberts, a Minor, KIM LESLIE ROBERTS, a Minor, and TOM PRINGLE, Guardian Ad Litem for Kim Leslie Roberts, a Minor, *Appellees*, and HARLEY A. COFFEY, Administrator De Bonis Non Cum Testamento Annexo, *Appellee* and *Cross Appellant*.)

(386 P. 2d 301)

Opinion filed November 2, 1963.

*Frank G. Theis,* of Arkansas City, argued the cause and was on the brief for the appellant.

*Earle N. Wright,* of Arkansas City, argued the cause, and *Ted M. Templar,* also of Arkansas City, and *Ralph W. Gilbert,* of Angleton, Texas, were with him on the brief for the appellees.

*Grant H. Cole,* of Winfield, argued the cause and was on the brief for the cross appellant.

The opinion of the court was delivered by

SCHROEDER, J.: This is an appeal from an order of the district court of Cowley County, Kansas, admitting a will to probate, after a verdict by an advisory jury was approved and judgment entered.

The underlying question in the case is whether the testator had sufficient mental capacity to make a will.

The appellant contends this case is unusual and unique among previously reported will contest cases before the Supreme Court on the subject of mental capacity in that the unchallenged and positive medical testimony of three specialists, who had treated

the testator for years, was the only medical testimony in the entire case. Their testimony was to the effect that the testator was totally incapacitated by advanced cerebral arterio-sclerosis and senile dementia, which affected the ability and power of his brain to use the reasoning processes. The appellant charges that the evidence in this case and the decision of the trial court admitting the will to probate "dramatize the wide and startling gap between the progress in medical science and the static and backward existence of Kansas law on the subject of mental capacity."

On the 5th day of August, 1952, Charles T. Roberts, hereafter referred to as the testator, executed his last will and testament. On February 11, 1953, testator was adjudged incompetent and a guardian appointed.

On March 3, 1961, shortly after the testator's death, his will was admitted to probate in the probate court of Cowley County, Kansas, and on appeal to the district court the matter of the decedent's testamentary capacity was tried *de novo,* with a jury in an advisory capacity.

The jury found the testator had testamentary capacity on August 5, 1952, and the trial court approved the finding of the jury and ordered the will in question admitted to probate.

The appellant attacks the testimony of the proponents' witnesses stating it is unsubstantial and incompetent. The appellant argues the witnesses for the proponents are weak because they do not measure up to the Kansas rule which requires a witness, preliminary to expressing an opinion on capacity, to relate facts which he observed about the testator as a foundation for such opinion. (Citing, *Baughman v. Baughman,* 32 Kan. 538, 4 Pac. 1003; and *In re Estate of Harris,* 166 Kan. 368, 201 P. 2d 1062.) The foregoing charge is not substantiated by the record.

At the trial in the district court the scrivener of the will, Stewart S. Bloss, an experienced attorney in Winfield, Kansas, and his secretary, Grace Hill, testified to all the essential matters necessary to show testamentary capacity. Other witnesses for the proponents were a real estate man who had known the testator for more than two years prior to the execution of the will and visited with him frequently; a friend of fifty years standing and a constant companion for four years immediately after the execution of the will; a niece who visited with the testator in 1952; a neighbor and a tenant of the testator who saw him many times in the summer

of 1952; and a former abstracter who had known the testator for forty years.

The substance of the testimony given by these seven witnesses, if taken as true, established the necessary elements of mental capacity to make a valid will as required and frequently applied by this court—that at the time the instrument was executed the testator knew and understood the nature and extent of his property; that he knew about his relatives and others who may be the objects of his bounty, and their condition and relation to him, and was able to direct and make disposition of his property with understanding and reason. (*Hudson v. Hughan,* 56 Kan. 152, 42 Pac. 701; *Barnhill v. Miller,* 114 Kan. 73, 217 Pac. 274; *Klose v. Collins,* 137 Kan. 321, 20 P. 2d 494; *Stayton v. Stayton,* 148 Kan. 172, 81 P. 2d 1; *In re Estate of Ellis,* 168 Kan. 11, 210 P. 2d 417; and *In re Estate of Millar,* 185 Kan. 510, 345 P. 2d 1033.)

The last will and testament of the testator, among other things, gave a life estate in the testator's 400-acre farm to Albert H. Roberts, his only son, the appellant herein. Albert had two children by his second wife, who later divorced him, and these two children are the named beneficiaries of the remainder interest in the real estate of the testator. The son of Albert died after the testator's death, and his infant daughter, Kim Roberts, is a party to this action in his stead.

The divorce between Albert and his second wife and its aftermath was very bitter, involving among other things the refusal of the mother to allow the children to see either Albert or his parents, one of whom was the testator. The result was complete estrangement between Albert and his children. Albert, the appellant herein, having been given only a life estate in the farm, is contesting the validity of the testator's will on the ground that he lacked testamentary capacity, and his daughter and granddaughter, having been given the remainder in fee to the farm and a house and lot in Winfield, are the proponents of the will.

The substance of the appellant's testimony was that the testator in 1940 at the age of 70 years suffered severe head injuries in an automobile accident, and according to medical testimony and lay testimony began to decline thereafter, both physically and mentally. Early in February, 1952, the testator suffered first, second and third degree burns to his lower limbs and body when his clothing ignited from a brush fire he had carelessly started on the farm. There was

evidence the testator developed peculiar mannerisms and behavior patterns noticeable by neighbors and business acquaintances, which became quite pronounced from 1951 onward, including a penchant to set fires. Early in the period of 1950 through 1951 the testator made three different wills (other than the will admitted to probate herein), one of which was admitted in evidence, and two of which were excluded, in all of which he left his property, excluding some minor bequests, to his son, the appellant, absolutely. The appellant contends the significant period, as far as the mental capacity of the testator was concerned, was from the time he was hospitalized from the severe burns early in February, 1952, until his adjudication as an incompetent in the probate court of Cowley County early in February, 1953.

Evidence was conflicting as to the testator's mental state during his hospitalization and thereafter. All of the appellant's witnesses described the testator as being incompetent, unsound of mind, and as having mental deterioration.

Three of the appellant's witnesses were physicians, two being specialists in diseases of the circulatory and cerebral-vascular system. They testified that they had known, examined and treated the testator for several years prior to sustaining his burns, and thereafter; that the serious burns were a severe traumatic experience which probably caused the disappearance of the testator's reasoning; that in their opinion the testator was not mentally competent during the year 1952, either while in the hospital for treatment of burns, or during the period between June and December, 1952, when none of them had occasion to see the testator, or in December, 1952, when the testator was again in the hospital for a heart attack, also stemming from his advanced arteriosclerotic condition. Both the loss of mind and heart attack were ascribed by the physicians as being the end results of lengthy and advanced stages of arteriosclerosis. These doctors, along with a nurse, identified the hospital records in the form of nurses' daily notes kept on the testator during his two hospitalizations in 1952 for burns and heart attack, which showed many notations by the nurses of the testator's mental aberrations.

The testator was maintained in boarding homes, rest homes and the hospital from November, 1952, until his death in 1961, at the age of 90 years.

It is the appellant's contention that "A trier of facts whether an advisory jury, a trial judge, or both, cannot disregard the only

medical evidence produced in the cause given by three eminent physicians and specialists in diseases of the circulatory and cerebral-vascular system, which is based on positive, uncontroverted testimony inherently probable, candid and unbiased, unsullied by adversary medical expert testimony or cross-examination, and given from several years of personal observation, diagnosis and treatment, that a testator lacks testamentary capacity."

From the evidence the appellant argues:

"5. The doctors were not saying that the fact that testator had both senile dementia and cerebral arteriosclerosis made him incompetent but that the established scientific results of brain or cerebral arteriosclerosis in this testator was that because of inability of sufficient blood to get to the brain through the narrowed and closed blood vessels of testator—whether large or small blood vessels was immaterial—the brain cells did not receive sufficient oxygen, had withered and died. In other words, the effects of the disease eroded away parts of the brain controlling the thought or reasoning processes.

"6. That the regeneration power of brain cells is practically nil and once they are damaged they do not return or rebuild themselves like other tissue, and so the power to reason or use the thought processes of the brain never comes back—hence there are no lucid moments. . . ."

The crux of the appellant's argument is therefore that the loss of brain tissue in the testator was a physical process as distinguished from a mental process, and while medical science did not know everything about how mental processes work, they were certain about the effects of physical processes such as occurred to the testator from advanced cerebral arteriosclerosis. By reason thereof, the appellant concludes that the testator was of unsound mind at all times during 1952, and it would have been impossible for him to have had a sound or lucid interval at the time he executed the will, "because he lacked the physical basis in his brain to understandingly and reasonably dispose of his property. The disease had destroyed the brain cells controlling his power to REASON and he could never again make a RATIONAL DECISION."

The appellant relies upon the proposition of law that ordinarily the trier of fact is not required to believe the testimony of any witness merely because there is no direct testimony to controvert it, but where the plaintiff produces the only testimony on every material element of his cause of action, and such testimony is not inherently improbable or uncandid, and the cross examination does not develop any conflict, and the defendant or opposite party or parties produce no testimony in opposition, the trier of fact is not justified in arbitrarily or capriciously disregarding such testimony.

(Citing, *Gibbs v. Central Surety & Ins. Corp.*, 163 Kan. 252, 181 P. 2d 498; *In re Estate of Wert*, 165 Kan. 49, 193 P. 2d 253; and *Reeves v. Child*, 165 Kan. 341, 194 P. 2d 919.)

The appellant contends his medical evidence was the strongest type of testimony that could be obtained on the issue of testamentary capacity, because it was based not on the statement of some assumed facts in a hypothetical question, but from the personal observation of these skilled and trained specialists in the cause, course and effects of the disease with which the testator was afflicted.

The foregoing rule upon which the appellant relies does not apply to the facts presently before the court. In fairness to the proponents of the will it should be said that two of the appellant's medical witnesses on cross examination weakened. One admitted the disposition of the property made by the testator in his will reflected a reasonable decision, and not having seen him on the day the will was executed he "wouldn't rule out completely with medical certainty that he didn't know what he was doing when he did it." The other medical witness also conceded he could not say with reasonable medical certainty the testator did not have testamentary capacity on August 5, 1952. He further conceded the testator might have had a lucid interval when he was making and signing the will in question even if he had had a large amount of deterioration.

The appellant recognizes his dilemma by inferentially admitting in his brief the proponents of the will made a *prima facie* case. He says, "the testimony produced at the trial on behalf of proponents was so weak, so biased, and so generalized as to barely raise Proponents' case to the *prima facie* level."

Counsel for the appellant also attacks certain decisions of the court and the doctrine of *stare decisis*. The appellant asserts that the evidence of his medical witnesses should virtually attain the high status of expert medical testimony in malpractice cases— where medical testimony is held necessary in order to prove a cause of action. (Citing, *Riggs v. Gouldner*, 150 Kan. 727, 728, 96 P. 2d 694.)

It must be observed, however, that even the rule in malpractice cases has its exception. This is indicated by Syllabus ¶ 2 in *Goheen v. Graber*, 181 Kan. 107, 309 P. 2d 636, as follows:

"In actions against physicians for negligence and malpractice in the treatment and care of patients, the established rule in this jurisdiction and elsewhere is that with respect to those matters clearly within the realm of medical science, such as whether a patient has been treated or an operation performed with a reasonable degree of skill and care, only those who are qualified as experts are competent to testify. Matters within the common knowledge of mankind generally, may be testified to by anyone familiar with the facts."

It has heretofore been held that where the validity of a will is attacked on the ground that the testator was mentally incompetent to make the will, nonexpert testimony is competent on the question of mental capacity, and the trier of facts is not bound to adopt the facts and opinions of a physician qualified as an expert in psychiatry and neurology, to the exclusion of other nonexpert testimony. (*In re Estate of Millar*, 185 Kan. 510, 345 P. 2d 1033.)

The appellant relies upon the *Millar* case and quotes the following passage:

"While the trier of the facts might under some circumstances *reject* expert testimony absolutely, depending upon the circumstances, and give it no weight because it is believed to be least worthy of credit, it does not follow that such expert testimony can be *disregarded*. (*Forsyth v. Church*, 141 Kan. 687, 42 P. 2d 875.)" (p. 517.)

The foregoing passage is construed by the appellant as a remark by the court expressing "doubts of automatically offsetting or disparaging expert medical opinion on testamentary capacity." This construction of the language is ill-founded.

It is believed the language requires no clarification. The term "disregarded" was used to mean: to give no thought to, or to pay no attention to, the testimony. On the other hand, if consideration is given to the testimony of an expert, it is not disregarded, even though it may be rejected by the trier of the facts because under the circumstances it was believed to be least worthy of credit. If rejected, the testimony is given no weight.

The testimony of experts is to be considered by the same rules and tried by the same tests as any other testimony adduced in a case, and is entitled to such weight and credit as the trier of the facts believes it possesses, when viewed in connection with all the circumstances and other testimony adduced in the case.

While it must be conceded in the *Millar* case, an osteopathic physician and two practicing physicians and surgeons who had attended the testator, testified on behalf of the proponents of the will, as against a psychiatrist, a specialist in mental disorders, for

the contestant, the opinion was not limited to the testimony of medical men or their comparative degree of specialty or skill. In Syllabus ¶ 6 the court said:

"The expert testimony of a psychiatrist on the question of mental capacity should not be so considered by the trier of the facts as to *nullify* all nonexpert testimony in conflict with it, nor should it be so considered as to nullify the expert testimony of medical doctors who attended the testatrix in her lifetime even though they were not specialists in psychiatry and neurology."

What has been said and held in the *Millar* case on the point presently under consideration controls our decision herein, and the reader is referred to that opinion without repeating what has already been said therein.

The appellant relies on *Johnson v. Schrader*, 114 Kan. 341, 219 Pac. 269, and quotes the following language:

". . . But the various specific acts tending to show unsoundness of mind, coupled with the opinions of the two physicians, warrant a finding that his unsoundness of mind was not merely occasional but a continuous condition which once established may be presumed to have remained unchanged in the absence of controlling evidence to the contrary. . . ." (p. 345.)

The trial court there found the testator was mentally incompetent to make a will, and *the evidence before the court warranted such a finding.*

Had the advisory jury in the instant case found the testator to be incompetent, and the finding of the trial court been consistent therewith, the evidence in the instant case would have warranted such a finding. That is not to say, however, that the trier of the fact in the instant case was bound to make such finding. Upon conflicting evidence the finding was to the contrary, and it was supported by substantial competent evidence set forth in the record.

The appellant complains of certain specified instructions given to the jury, contending they had a tendency to mislead a lay jury. In the instant case the jury was only serving in an advisory capacity and its findings were thus only advisory. Under such circumstances, the findings made by a trial court are independent findings made upon a consideration of the same evidence presented to the jury. Error, if any, made by the trial court in giving instructions to an advisory jury are immaterial. (*Munn v. Gordon,* 87 Kan. 519, 522, 125 Pac. 7; and *Minch v. Winters,* 122 Kan. 533, 253 Pac. 578.)

The appellant next contends the cumulative effect of numerous trial errors prejudiced his cause of action, and his right to a fair

and impartial trial on the sole question of the testamentary capacity of the testator.

First, the appellant contends it was a breach of the trial court's discretion to permit an advisory jury for the trial of this case.

There is nothing whatsoever in the record to indicate any abuse of discretion by the trial court in calling the jury in an advisory capacity.

Second, the appellant contends it was error for the proponents of the will to inject partisan politics into *voir dire* examination of the jury. Here, however, the appellant fails to abstract facts to show that any objections were made by the appellant to such questions.

Third, the appellant contends it was error for the trial court to refuse his expert medical witness, Dr. Snyder, to testify whether the existence of the so-called "Elrod delusion" motivated or affected the testator in the making of the will in question. This point has reference to testimony that the testator believed he was cheated out of a share of the estate of his wife's father by the name of Elrod, when, as a matter of fact, he had no interest in such estate as an heir.

The record as abstracted does not show that the excluded evidence was produced at the hearing of the motion for a new trial pursuant to G. S. 1949, 60-3004. Where the ground of the motion for a new trial is error in the exclusion of evidence, the excluded evidence must be produced at the hearing of the motion for a new trial. (*In re Estate of Millar*, supra, Syl. ¶ 2.)

Fourth, the appellant complains because the trial court did not permit him to introduce two copies of wills purported to be made by the testator dated September 8, 1950, and one dated September 13, 1950, for the purpose of showing the expressed intention of the testator at the time to leave his principal estate to the appellant, absolutely. No proper foundation was laid for the admission of these wills into evidence in that there was a failure to show the wills had ever been executed, or that they had been prepared at the direction of the testator.

Fifth, the appellant complains that the trial court permitted him to be cross-examined concerning the divorce of his second wife, and the support of his minor children, under the guise of testing his credibility when the subject matter was not gone into on direct examination. It is argued counsel for the proponents pursued this course of examination for the sole reason of inflaming and prejudicing the court and jury against the appellant.

When a party takes the stand as a witness his adversary has a right, on cross examination, to inquire concerning his past life and conduct for the purpose of affecting his credibility. The limit of such inquiry is ordinarily within the discretion of the trial court. (*Sanders v. Sitton*, 179 Kan. 118, 292 P. 2d 1099, Syl. ¶ 4.)

It could not be said from the record here presented that the trial court abused its discretion on this point.

Other errors urged by the appellant have been given careful consideration, but upon the record presented are found to have no substantial merit.

On the basis of the record presented, it does not affirmatively appear that errors made by the trial court, if any, have prejudicially affected the substantial rights of the appellant.

A cross appeal has been perfected by the administrator *de bonis non cum testamento annexo* from the order of the district court allowing attorneys' fees to the respondents' (proponents') attorneys in the sum of $3,500; to the appellant's attorney in the sum of $3,000; and to the guardian ad litem in the sum of $400.

The questions raised by the cross appellee are (1) whether it is proper for a trial court to allow attorney's fees to the attorney for an unsuccessful contestant of a last will and testament where the contestant's purpose by his own statements was for his own benefit; and (2) whether a trial court may order attorneys' fees to be paid which total $6,900, exclusive of fees eventually to be allowed to the attorneys for the administrator and administrator *de bonis non cum testamento annexo*, when the gross amount of said estate totals only $50,147.97.

G. S. 1949, 59-1504, provides in part:

". . . Whenever any person named in a will or codicil defends it, or prosecutes any proceedings in good faith and with just cause, for the purpose of having it admitted to probate, whether successful or not, or if any person successfully opposes the probate of any will or codicil, he shall be allowed out of the estate his necessary expenses and disbursements in such proceedings, together with such compensation for his services and those of his attorneys as shall be just and proper."

While the foregoing statute is part of the probate code, it has been held in conection with the allowance of reasonable attorneys' fees in cases involving litigation over a will that under the provisions of what is now G. S. 1949, 60-3706, the district court in its discretion has authority to tax costs and allow attorneys' fees and to determine from what source they should be paid, as it may

deem right and equitable. (*In re Estate of Sowder*, 185 Kan. 74, 340 P. 2d 907, and cases cited therein at page 86 of the official report.)

Under G. S. 1949, 59-2408, an appeal from a decision of the probate court places the matter in the district court for a trial *de novo* as though that court had jurisdiction on all matters therein involved. In the determination of the issues the district court can exercise the same jurisdiction and power as though the controversy had been initiated there. (*In re Estate of Walton*, 183 Kan. 238, 326 P. 2d 264.)

Construing the force and effect of the foregoing statutes (59-1504, 60-3706, and 59-2408, *supra*) we hold the district court was authorized to make an allowance for attorneys' fees on the matter litigated to the extent such allowance is authorized by 59-1504, *supra*.

Ordinarily attorneys' fees will not be paid to an unsuccessful contestant of a last will and testament where the primary purpose in contesting the will is for the contestant's own benefit. In the instant case the will is perfectly clear and unambiguous. It required no construction to give it force and effect. The litigation involved only the mental capacity of the testator to make a will. The sole purpose of the appellant's action was to gain the entire estate for himself as the sole heir of the testator, but was unsuccessful in the litigation.

In *Householter v. Householter*, 160 Kan. 614, 164 P. 2d 101, the appellees were forced to involuntarily uphold a will which did not appear on its face to be ambiguous. No estate or trust fund was benefited by the litigation. The court held the appellant sought to recover for his personal benefit—not for the benefit of all parties incidentally concerned with the litigation. The court said: ". . . In such cases attorneys' fees ordinarily are not properly allowed to counsel for the unsuccessful party. . . ." (p. 620.)

A similar case is *In re Estate of Reynolds*, 176 Kan. 254, 270 P. 2d 229, where one of the defendants sought to have a will construed upon a point which was clear and needed no construction. It was held the trial court was justified in denying the attorneys' fees of her counsel and assessing them against the funds of the estate. Other cases discussing this point are *In re Estate of Sowder*, supra; and *Parsons v. Smith, Trustee*, 190 Kan. 569, 376 P. 2d 899.

In view of the foregoing we hold it was error for the trial court

to allow attorney's fees to the appellant's attorney in the sum of $3,000.

The only other point presented by the cross appeal involves the reasonableness of the allowance of attorneys' fees to the respondents' attorneys and to the guardian ad litem. This matter is within the discretion of the trial court and we cannot say in view of the size of the gross estate that such allowances were excessive for the attorneys' services in this litigation.

Based on what has heretofore been stated and held, the judgment of the lower court ordering the last will and testament of Charles T. Roberts, deceased, admitted to probate is affirmed; the judgment insofar as it ordered the allowance of attorneys' fees for respondents' attorneys in the sum of $3,500 and guardian ad litem fees in the sum of $400 is affirmed; but the judgment insofar as it ordered the allowance of attorney's fees for the appellant's attorney in the sum of $3,000 is reversed.