701 P.2d 222

**Adrian CARPENTER and Ruth Carpenter, husband and wife; John Eisenbarth and Violet Eisenbarth, husband and wife; J. Keith Jones and Patricia Jones, husband and wife; Kenneth F. Skow and Margie Skow, husband and wife; Duane Wiggins and Rosemary Wiggins, husband and wife; Gary Lewallen and Carol Lewallen, husband and wife, Plaintiff-Appellants,**

v.

**The DOUBLE R CATTLE COMPANY, INC.; the Sunnyside Feed Lot Company, Inc.; and the Idaho Feed Lot Company, Inc., Defendant-Respondents.**

No. 15283.

Supreme Court of Idaho.

May 21, 1985.

Richard B. Eismann, Daniel T. Eismann, and Roderick B. Wood, Homedale, Philip H. Gordon, Council, Kent B. Power, Boise, for appellants.

Robert J. Koontz, now of Evans, Keane, Koontz, Boyd & Ripley, Boise, and Robert M. Tyler, Jr., of Elam, Burke & Boyd, Boise, for respondents.

Andrew Harrington, of Anderson, Kaufman, Anderson & Ringert, Boise, for amicus curiae.

BAKES, Justice.

Plaintiffs appealed a district court judgment based upon a court and jury finding that defendant's feedlot did not constitute a nuisance. The Court of Appeals, 105 Idaho 320, 669 P.2d 643, reversed and remanded for a new trial. On petition for review, we vacate the decision of the Court of Appeals and affirm the judgment of the district court.

Plaintiff appellants are homeowners who live near a cattle feedlot owned and operated by respondents. Appellants filed a complaint in March, 1978, alleging that the feedlot had been expanded in 1977 to accommodate the feeding of approximately 9,000 cattle. Appellants further alleged that "the spread and accumulation of manure, pollution of river and ground water, odor, insect infestation, increased concentration of birds, ... dust and noise" allegedly caused by the feedlot constituted a nuisance. After a trial on the merits a jury found that the feedlot did not constitute a nuisance. The trial court then also made findings and conclusions that the feedlot did not constitute a nuisance.

Appellants assigned as error the jury instructions which instructed the jury that in the determination of whether a nuisance exists consideration should be given to such factors as community interest, utility of conduct, business standards and practices, gravity of harm caused, and the circumstances surrounding the parties' movement to their locations. On appeal, appellants chose not to provide an evidentiary record, but merely claimed that the instructions misstated the law in Idaho.

The case was assigned to the Court of Appeals which reversed and remanded for a new trial. The basis for this reversal was that the trial court did not give a jury instruction based upon subsection (b) of Section 826 of the Restatement (Second) of Torts. That subsection allows for a finding of a nuisance even though the gravity of harm is outweighed by the utility of the conduct if the harm is "serious" and the payment of damages is "feasible" without forcing the business to discontinue.

This Court granted defendant's petition for review. We hold that the instructions which the trial court gave were not erroneous, being consistent with our prior case law and other persuasive authority. We further hold that the trial court did not err in not giving an instruction based on subsection (b) of Section 826 of the Second Restatement, which does not represent the law in the State of Idaho, as pointed out in Part III. Accordingly, the decision of the Court of Appeals is vacated, and the judgment of the district court is affirmed.

## I.

### The Record

The appellants have the burden of showing reversible error on appeal. Error cannot be presumed on appeal, but requires an affirmative showing. *Rutter v.*

*McLaughlin,* 101 Idaho 292, 612 P.2d 135 (1980). Not only did the appellants not request an instruction based on subsection (b) of Section 826, Restatement (Second), appellants objected to the court giving any instructions based upon the Restatement.[1] Additionally, the appellants did not assign as error on appeal the trial court's failure to give such an instruction based on subsection 826(b) of the Restatement (Second). Nevertheless, the Court of Appeals, apparently *sua sponte,* reversed for failure to give such an instruction. In so doing, the Court of Appeals erred.

■ Even assuming that appellants had requested an instruction based on Section 826(b) of the Second Restatement, there is no way to determine reversible error or prejudice without a complete record on appeal of the evidence at trial. In order for a nuisance to be found under Section 826(b), substantial competent evidence would have had to be presented that the harm was "serious" and that compensation for the harm was "feasible" without jeopardizing the continuance of the business. If substantial and competent evidence on these two issues was not presented at trial, then there would have been no factual basis for the trial court to give an instruction based on Section 826(b), assuming one had been requested. Appellants have not provided a transcript on appeal to document whether there was any evidence to justify such an instruction. Therefore, the judgment of the trial court should be affirmed on that basis alone. *Rutter v. McLaughlin,* 101 Idaho 292, 612 P.2d 135 (1980) (no error presumed based upon incomplete record).

## II.

### *The Instructions*

#### A

■ The Court of Appeals erred in relying on *Yacht Club Sales & Service v. First National Bank of North Idaho,* 101 Idaho 852, 623 P.2d 464 (1980), as authority for reversal. The *Yacht Club* rule is that "instructions which are *contradictory on material matters* constitute prejudicial error and require reversal." (Emphasis added.) However, the Court of Appeals did not point out any instructions given by the trial court which were "contradictory" with each other. Rather the Court of Appeals acknowledged that the instructions given were "consistent" with the First Restatement and IDJI 491:

"In short, *the district judge gave the jury a set of instructions which did not conform precisely to but were consistent with, the First Restatement and IDJI 491.* The court took no account of *Koseris,* nor the dual criteria for determining the existence of a nuisance under Section 826 of the Second Restatement. *The jury was given no instruction on damage liability comparable to Section 826(b) of the Second Restatement.* We conclude that the jury was improperly instructed, in light of our adoption today of the Second Restatement's criteria for determining existence of a nuisance." *Carpenter v. Double R Cattle Co., Inc.,* 105 Idaho 320, 335, 669 P.2d 643, 657 (Ct.App.1983) (emphasis added).

The basis for the Court of Appeals reversal is that the trial court failed to instruct the jury based on the subsection 826(b) of the Second Restatement, not that the instructions were contradictory. Prior to adoption of the Idaho Rules of Civil Procedure, we held consistently that the failure to give a particular instruction which was never requested was not grounds for reversal. *See Gayhart v. Schwabe,* 80 Idaho 354, 330 P.2d 327 (1958); *Pittman v. Sather,* 68 Idaho 29, 188 P.2d 600 (1947). Our present

---

1. At the instruction conference, the plaintiff-appellants objected, stating:
   "As I read most of those instructions, fourteen through twenty-six, I find recitation after recitation of material from the restatement of . . . torts; and our objection is that, first, restatement of the law of torts is not the law of Idaho relative to injunctions, so that to the

extent that it quotes them, or purports to set forth the restatement as the law of Idaho. It does not directly state the law in the forty years since the restatement has been adopted. The Idaho Supreme Court has never referred to, or cited the restatement of the law of torts as it applies to private nuisance."

rule, I.R.C.P. 51(a) is silent on whether a party must object to a given instruction or specifically request an instruction in order to assign as error the giving of the instruction or failure to give the instruction. However, "[t]his Court has long adhered to the rule that when the instructions given by the trial court are correct insofar as they go, one cannot complain of the failure to give additional instructions if none are requested." *Holland v. Peterson*, 95 Idaho 728, 730, 518 P.2d 1190, 1192 (1974). We have also recently stated that, "our cases clearly reject the notion that one may assign as error the court's instructing in language which that person has specifically requested the court to give...." *McBride v. Ford Motor Co.*, 105 Idaho 753, 762, 673 P.2d 55, 64 (1983). A variation of this rule also precludes reversible error in this case; that is, this Court will not find reversible error in the failure to give an instruction where the appellant argued against the giving of such an instruction at trial. In this case the appellants argued at the instruction conference that no instructions should be given based upon the Second Restatement. Again on appeal, the appellants argued that the Restatements should not apply. Therefore, there was no error in the trial court's failure to instruct the jury based upon subsection 826(b) of the Second Restatement. To establish error for failure to give an instruction, it must be shown at a minimum that: the instruction was not argued against by the appellant; the instruction was a correct statement of Idaho law; and, the failure to instruct was assigned as error on appeal. None of these initial criteria in establishing error in the instructions has been met by appellant. The Court of Appeals erred in reversing the district court on the instructions.

## B

■ ■The plaintiff's complaint, seeking to enjoin the operation of the feedlot, invoked the equity jurisdiction of the district court. "[E]quity having obtained jurisdiction of the subject matter of a dispute, will retain it for the settlement of all controversies between the parties...." *Boesiger v. Freer*, 85 Idaho 551, 563, 381 P.2d 802, 809 (1963). Since the plaintiff's complaint invoked the equitable jurisdiction of the district court, the jury's verdict and findings would be advisory only,[2] and under I.R.C.P. 52(a), the judge has the responsibility of making the ultimate findings and decision in the case,[3] which the district judge did in this case, finding that no nuisance existed. Therefore, whether or not the trial court erred in instructing the jury is immaterial since the judge, not the jury, had the responsibility for making the ultimate findings and decision in the matter. As stated by the Supreme Court of Kansas in the case of *In re Roberts Estate*, 192 Kan. 91, 386 P.2d 301 (1963):

"The appellant complains of certain specified instructions given to the jury, contending they had a tendency to mislead a lay jury. In the instant case the jury was only serving in an advisory capacity and its findings were thus only advisory. Under such circumstances, the findings made by a trial court are independent findings made upon a consideration of the same evidence presented to the jury. Errors, if any, made by the trial court in giving instructions to an advisory jury are immaterial." *In re Roberts Estate*, 192 Kan. 91, 386 P.2d 301, 308 (1963).

■ The district judge found as an ultimate fact that no nuisance existed in the

---

**2.** There is an additional basis for finding that the jury was advisory only. Neither party requested a jury in their pleadings or within ten days of service of the last pleading. It is possible that such a demand or subsequent motion was made. However, appellants had the burden of providing an adequate record on appeal, and without such record we can only assume that a demand was not made. I.R.C.P. 39(b) provides

that issues not demanded for jury trial by I.R.C.P. 38 shall be tried to the court.

**3.** I.R.C.P. 52(a) reads in part: "In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment...."

present case. Appellants, having chosen not to bring up the record of the evidence, it must be presumed that substantial, competent evidence existed to support the district judge's finding that no nuisance occurred. *Rutter v. McLaughlin*, 101 Idaho 292, 612 P.2d 135 (1980). The failure to give a particular jury instruction or the alleged error in the given instructions is immaterial since the judge, not the jury, was the ultimate factfinder. Appellants make no claim regarding the adequacy of the district judge's findings in his memorandum opinion. Accordingly, the judgment of the district court that no nuisance existed should have been affirmed on that basis also.

### III.

#### *The Law of Nuisance*

The Court of Appeals adopted subsection (b) of Section 826 of the Restatement Second, that a defendant can be held liable for a nuisance regardless of the utility of the conduct if the harm is "serious" and the payment of damages is "feasible" without jeopardizing the continuance of the conduct. We disagree that this is the law in Idaho.

At the outset, it is important to again note that appellants neither requested such an instruction nor assigned as error the failure of the trial court to give an instruction consistent with the new rule stated above. In fact, the appellants initially argued both at trial and on appeal that the Second Restatement should not apply and objected to giving any instructions based on the Restatement. It is therefore not surprising that the trial court did not give an instruction on the new rule in Section 826(b), Restatement (Second). Further, the instructions given were consistent with both the First Restatement and Section 826(a) of the Second Restatement, and also our decisions in *McNichols v. J.R. Simplot Co.*, 74 Idaho 321, 262 P.2d 1012 (1953) (action for damages and injunction), and *Koseris v. J.R. Simplot Co.*, 82 Idaho 263, 352 P.2d 235 (1960) (action for injunction only).

■ The Court of Appeals, without being requested by appellant, adopted the new subsection (b) of Section 826 of the Second Restatement partially because of language in *Koseris* which reads:

"We are constrained to hold that the trial court erred in sustaining objections to those offers of proof [evidence of utility of conduct], since they were relevant as bearing upon the issue whether respondents, in seeking injunctive relief, were pursuing the proper remedy; nevertheless, on the theory of damages which respondents had waived, the ruling was correct." 82 Idaho at 270, 352 P.2d at 239.

The last phrase of the quote, relied on by the Court of Appeals, is clearly *dictum*, since the question of utility of conduct in a nuisance action for damages was not at issue in *Koseris*. It is very doubtful that this Court's *dictum* in *Koseris* was intended to make such a substantial change in the nuisance law. When the isolated statement of *dictum* was made in 1960, there was no persuasive authority for such a proposition. Indeed, no citation of authority was given. The three cases from other jurisdictions which the Court of Appeals relied on for authority did not exist until 1970. *See Boomer v. Atlantic Cement Co.*, 26 N.Y.2d 219, 309 N.Y.S.2d 312, 257 N.E.2d 870 (1970); *Jost v. Dairyland Power Co-op.*, 45 Wis.2d 164, 172 N.W.2d 647 (1970). The third case from Oregon, *Furrer v. Talent Irr. Dist.*, 258 Or. 494, 466 P.2d 605 (1970), was not even a nuisance case. Rather, it was an action in "negligence." The Second Restatement, which proposed the change in the law by adding subsection (b) to Section 826, was also not in existence until 1970. Therefore, we greatly discount this Court's *dictum* in the 1960 *Koseris* opinion as authority for such a substantial change in the nuisance law. The case of *McNichols v. J.R. Simplot Co.*, 74 Idaho 321, 262 P.2d 1012 (1953) should be viewed as the law in Idaho that in a nuisance action seeking damages the interests of the community, which would include the utility of the conduct, should be considered in the determination of the existence of a nuisance. The

trial court's instructions in the present case were entirely consistent with *McNichols*. A plethora of other modern cases are in accord. *E.g., Nissan Motor Corp. v. Maryland Shipbuilding & Drydock Co.,* 544 F.Supp. 1104 (D.Md.1982) (utility of defendant's conduct is factor to be considered in determining existence of nuisance in damages action); *Little Joseph Realty, Inc. v. Town of Babylon,* 41 N.Y.2d 738, 395 N.Y. S.2d 428, 363 N.E.2d 1163 (N.Y.Ct.App. 1977) (indicating that New York still adheres to balancing of risk and utility, requiring that harm to plaintiff must outweigh social usefulness of defendant's activity); *Pendergrast v. Aiken,* 293 N.C. 201, 236 S.E.2d 787 (1977) (balancing of harm versus utility retained, despite change of section 826 Restatement (Second) of Torts); *Pate v. City of Martin,* 614 S.W.2d 46 (Tenn.1981) (determination of existence of nuisance in action for damages and injunction cannot be determined by exact rules, but depends on circumstances of each case, including locality and character of surroundings, as well as utility and social value of defendant's conduct).

■ The State of Idaho is sparsely populated and its economy depends largely upon the benefits of agriculture, lumber, mining and industrial development. To eliminate the utility of conduct and other factors listed by the trial court from the criteria to be considered in determining whether a nuisance exists, as the appellant has argued throughout this appeal, would place an unreasonable burden upon these industries. We see no policy reasons which should compel this Court to accept appellant's argument and depart from our present law. Accordingly, the judgment of the district court is affirmed and the Court of Appeals decision is set aside.

Costs to respondents. No attorney fees.

DONALDSON, C.J., and SHEPARD, J., concur.

BISTLINE, Justice, dissenting.

We have before us today a most remarkable event: two appellate courts, each obviously unaware of its true appellate function. The Court of Appeals, in reviewing the instant case, acted as a court of law, while the Idaho Supreme Court functioned as a court of error correction. In my mind, the roles have been reversed—I always understood that the Court of Appeals was a court of error correction, and it was our function to act as a court of law. I applaud the efforts of the Court of Appeals to modernize the law of nuisance in this state. I am not in the least persuaded to join the majority with its narrow view of nuisance law as expressed in the majority opinion.

The majority today continues to adhere to ideas on the law of nuisance that should have gone out with the use of buffalo chips as fuel. We have before us today homeowners complaining of a nearby feedlot— not a small operation, but rather a feedlot which accommodates 9,000 cattle. The homeowners advanced the theory that after the expansion of the feedlot in 1977, the odor, manure, dust, insect infestation and increased concentration of birds which accompanied all of the foregoing, constituted a nuisance. If the odoriferous quagmire created by 9,000 head of cattle is *not* a nuisance, it is difficult for me to imagine what is. However, the real question for us today is the legal basis on which a finding of nuisance can be made.

The Court of Appeals adopted subsection (b) of § 826 of the Restatement (Second) of Torts.[1] The majority today rejects this Restatement section, reasoning that the Court of Appeals improperly relied upon dictum in *Koseris v. J.R. Simplot Co.,* 82 Idaho 263, 352 P.2d 235 (1960). *See infra,* at 227. Instead, the majority holds that the 1953 case of *McNichols v. J.R. Simplot*

1. **§ 826. Unreasonableness of Intentional Invasion.** An intentional invasion of another's interest in the use and enjoyment of land is unreasonable if
(a) the gravity of the harm outweighs the utility of the actor's conduct, or

(b) the harm caused by the conduct is serious and the financial burden of compensating for this and similar harm to others would not make the continuation of the conduct not feasible.

*Co.*, 74 Idaho 321, 262 P.2d 1012 (1953) espoused the correct rule of law for Idaho: in a nuisance action seeking damages, the interests of the community, which includes the utility of the conduct, should be considered in determining the existence of a nuisance. I find nothing immediately wrong with this statement of the law and agree wholeheartedly that the interests of the community should be considered in determining the existence of a nuisance. However, where this primitive rule of law fails is in recognizing that in our society, while it may be desirable to have a serious nuisance continue because the utility of the operation causing the nuisance is great, at the same time, those directly impacted by the serious nuisance deserve some compensation for the invasion they suffer as a result of the continuation of the nuisance. This is exactly what the more progressive provisions of § 826(b) of the Restatement (Second) of Torts addresses. Clearly, § 826(b) recognizes that the continuation of the serious harm must remain feasible. *See especially* comment on clause (b), subpart f of § 826 of the Restatement. What § 826(b) adds is a method of compensating those who must suffer the invasion without putting out of business the source or cause of the invasion. This does not strike me as a particularly adventuresome or far-reaching rule of law. In fact, the fairness of it is overwhelming.

The majority's rule today overlooks the option of compensating those who suffer a nuisance because the interests of the community outweigh the interests of those afflicted by the nuisance. This unsophisticated balancing overlooks the possibility that it is not necessary that one interest be ignored when the community interest is strong. We should not be adopting a rule of preference which suggests that if the community interest is preferred any other interest must be disregarded. Instead, § 826(b) accommodates adverse interests by contemplating continuation of the facility which creates the nuisance while compensating those who suffer the direct impact of the nuisance—in the instant case

the homeowners who live in the vicinity of the feedlot.

The majority's rule today suggests that part of the cost of industry, agriculture or development must be borne by those unfortunate few who have the fortuitous luck to live in the immediate vicinity of a nuisance producing facility. Frankly, I think this naive economic view is ridiculous in both its simplicity and its outdated view of modern economic society. The "cost" of a product includes not only the amount it takes to produce such a product but also includes the external costs: the damage done to the environment through pollution of air or water is an example of an external cost. In the instant case, the nuisance suffered by the homeowners should be considered an external cost of operating a feedlot and producing beef for public consumption. I do not believe that a few should be required to pay this extra cost of doing business by going uncompensated for a nuisance of this sort. If a feedlot wants to continue, I say fine, providing compensation is paid for the serious invasion (the odors, flies, dust, etc.) of the homeowner's interest. My only qualification is that the financial burden of compensating for this harm should not be such as to force the feedlot (or any other industry) out of business. The true cost can then be shifted to the consumer who rightfully should pay for the *entire* cost of producing the product he desires to obtain.

The majority today blithely suggests that because the State of Idaho is sparsely populated and because our economy is largely dependent on agriculture, lumber, mining and industrial development, we should forego compensating those who suffer a serious invasion. If humans are such a rare item in this state, maybe there is all the more reason to protect them from the discharge of industry. At a minimum, we should compensate those who suffer a nuisance at the hands of industry and agriculture. What the majority overlooks is that the cost of development should not be absorbed by few, but rather should be spread out and paid by all. I am not convinced that agriculture or industry will be put out of business by requiring compensation for

the nuisance they generate. Let us look at the case before us. The owners of the feedlot will not find themselves looking for new jobs if they are required to compensate the homeowners for the stench and dust and flies attendant with 9,000 head of cattle. Rather, meat prices at the grocery store will undoubtedly go up. But, in my view it is far better that the cost of the nuisance be carried by the consumer of a product than by the unfortunate homeowners currently suffering under adverse conditions. Some compensation should be paid the homeowners for suffering the burden from which we all benefit.

The decision of the Court of Appeals is an outstanding example of a judicial opinion which comes from a truly exhaustive and analytical review. *See* 105 Idaho 320, 669 P.2d 643 (1983). I see no need to reiterate the authority cited therein. The Court of Appeals clarified the standard for determining the existence of a nuisance. Because the jury instructions were inconsistent with this Idaho law, the Court of Appeals properly vacated the lower court judgment.

The majority today cites *Rutter v. McLaughlin,* 101 Idaho 292, 612 P.2d 135 (1980), for the rule that this Court must presume that substantial and competent evidence existed to support the lower court's finding when the appellant has failed to supply this Court with a complete record. *See infra,* at 226. In *Rutter* we stated:

> On appeal the appellant must carry the burden of showing that the district court committed error. Error will not be presumed on appeal but must be affirmatively shown on the record by appellant. *Dawson v. Mead,* 98 Idaho 1, 557 P.2d 595 (1976); *Glenn Dick Equip. Co. v. Galey Construction, Inc.,* 97 Idaho 216, 541 P.2d 1184 (1975). Where an incomplete record is presented to this Court, the missing portions of that record are to be presumed to support the action of the trial court. See *Stewart v. Arrington Constr. Co.,* 92 Idaho 526, 446 P.2d 895 (1968); *Cullison v. City of Peoria,* 120 Ariz. 165, 584 P.2d 1156 (1978).

This correct statement of the law has no bearing on the appeal before us today wherein the appellants are challenging the law as set forth in the jury instructions. They are not suggesting that substantial and competent evidence did not support the findings of the lower court. In this regard, I find the majority's argument and citation of *Rutter* inapposite and without merit. Clearly the majority's statements about an incomplete record have less weight than dictum because the issue on appeal is the statement of the law as found in the jury instructions, not whether the evidence supported the findings of the lower court.

HUNTLEY, Justice, concurring.

I concur in the dissent of Justice Bistline. Additionally, I am at a loss to understand the following statement of the majority to the effect that it is of no consequence that the trial court gave erroneous instructions while using an advisory jury:

> Therefore, whether or not the trial court erred in instructing the jury is immaterial since the judge, not the jury, had the responsibility for making the ultimate findings and decision in the matter.

If the trial court did not understand the law when it framed the jury instructions, it seems elementary and a given that it decided the case under a misapprehension of the law.