456 P.2d 762

STATE of Idaho, for the Use and Benefit of PIERCE R. SMITH, P. G. WHITMAN & JOHN E. WHITMAN, a Co-Partnership, dba Hunt Process Co., Plaintiffs-Respondents,

v.

JACK B. PARSON CONSTRUCTION, a Partnership, Jack B. Parson Construction Co., a Corporation and Continental Casualty Co., a Corporation, Defendants-Appellants.

JACK B. PARSON CONSTRUCTION CO., a Utah Corporation, Plaintiff-Appellant,

v.

PIERCE R. SMITH, P. G. WHITMAN & JOHN E. WHITMAN, a Co-Partnership dba Hunt Process Company, Defendants-Respondents.

No. 10155.

Supreme Court of Idaho.

June 27, 1969.

Racine, Huntley, Herzog, Olson & Zener, Pocatello, for appellants.

Merrill & Merrill, Pocatello, for appellee.

McQUADE, Justice.

This opinion treats together two actions which were consolidated for trial, since they arose out of the same transactions. The real plaintiff in this action (respondent on appeal) is the Hunt Process Company (Hunt), a California co-partnership.

authorized to do business in Idaho. Hunt has long specialized in doing certain work on highway construction projects: "membrane curing," the process of spraying wet concrete with a substance in order to seal the original mixing water in the mass and develop strength; "joint sawing," the process of sawing the concrete slabs laterally and longitudinally to provide flexibility and control cracking; "joint sealing," the process of filling the joints with a polysulfide polymer substance to keep water out of the joints.

Appellant (defendant below) is the Jack B. Parson Construction Company (Parson), a Utah corporation authorized to do business in Idaho. On August 9, 1962, Parson entered into a contract as general contractor with the State of Idaho for the construction of 6.361 miles of U. S. Highway 30 North near Montpelier, Idaho. On November 20, 1962, Hunt entered into a subcontract with Parson for the completion of the three processes described above on this 6.361 miles of concrete highway. Parson executed a payment bond as required by I.C. § 45–502. The general contract specified a completion date of September 15, 1963, after which date penalties of $250 per day would be assessed for delay. The subcontract specified the same completion date and penalties for Hunt and any delay it might cause.

In precontract discussions, Parson indicated to Hunt that work on the concrete phase of the project could be expected to begin on June 1, 1963. However, because of an unusually large amount of precipitation in the spring of 1963, the establishment of a proper base for the concrete was delayed, and Parson did not begin to lay concrete until August 8, 1963. On July 29, 1963, the Department of Highways had notified Parson that as of July 27, 1963, 58.1 per cent of the project was completed with 86.8 per cent of the specified time elapsed. The resident chief engineer noted that the weather had been ideal since June 26, 1963, and that Parson's lack of sufficient equipment had slowed progress. The engineer reminded Parson that the application of asphaltic material to the highway shoulders would not be permitted after September 15, 1963, in accordance with the specifications.

On August 2, 1963, Parson requested from the State of Idaho an extension of time on the project of thirty days from September 15, 1963, to October 15, 1963. In this same letter, written even before Parson had begun to lay concrete, Parson also requested written waiver of the specification that asphaltic material may not be applied after September 15. On August 30, 1963, the district engineer recognized Parson's request for an extension of time and noted that there was no possibility of completing the project within the specified time. Action on Parson's request for waiver of the asphalt application specification to the highway shoulders was deferred. The record then shows that the State of Idaho granted an extension of time on the project of thirty working days, but that a written waiver of the asphalt specification prohibiting its application after September 15 was not granted, and Parson made no further request for such a waiver.

Further evidence produced at the trial to the court sitting without a jury showed that, despite certain apparently normal difficulties with Hunt's equipment, Hunt had caused no delay through the performance of its membrane curing and joint sawing functions. The real controversy centered around the joint sealing operation. The subcontract provided that this operation was to be performed "as the concrete * * * [was] laid." However, Hunt began the joint sealing operation only on September 19, 1963, after nearly all the concrete had been laid. Hunt assumed the 30-day extension of the completion date applied to it as well as to Parson. Hunt delayed the initiation of joint sealing because it felt the job could be done more efficiently in longer series rather than in fragments and because their most experienced man in this process was not yet available. Certain delays in this operation were caused by a shortage of sealing material (polysulfide polymer), which was

Hunt's responsibility. Some of this material was defective and unusable, and the amounts needed exceeded the supply because of extra sealing of cracks for which Hunt accepted responsibility and because of cold weather which required extra amounts to seal widened spaces in the concrete.

Parson finished laying concrete on September 21, 1963. Hunt completed its processes on November 14, 1963. Parson returned to the project in the spring of 1964 to finish the asphalt shoulders. The entire project was completed and accepted by the State on July 10, 1964. The State assessed Parson with three days delay, or liquidated damages of $750. On August 21, 1964, Hunt demanded of Parson $9,-548.03 as the last installment due on the subcontract plus approved extras and less credits. Hunt was compelled to bring suit against Parson for this amount, and thus Hunt also claimed interest, attorney fees and costs.

The court awarded judgment to Hunt for the amount due on the contract as well as for approved extras, less credits and $750, the amount of the only penalty assessed against Parson by the State, for a total of $8,798.03. The court found that Hunt caused Parson only three days delay. The court also awarded Hunt interest at 7% from August 21, 1964, to July 19, 1967, attorney fees of $2,500, and costs.

Appellant Parson mainly challenges the district court's findings of fact and contends that the district court erred in denying its counterclaim either for liquidated damages of $2,610.62 under the subcontract for 51 days delay or for consequential damages of $32,742.80 involved in its having to return to the project in the spring of 1964.

The claim by Parson for liquidated damages for an alleged 51 day delay by Hunt is premised on the assumption that the thirty working day extension of time on the project applied for the benefit of the contractor Parson but not for the benefit of the subcontractor Hunt. We reject this assumption and the claim premised on it for several reasons. First, Parson requested the time extension, as the State granted it, with reference to the entire project and not for the benefit of any one contractor. Second, the work of the subcontractor Hunt was so related to that of the contractor Parson that Hunt could not finish until Parson first had finished. Hunt obviously could not cure, saw and seal the concrete until Parson had laid it, and, since Parson exceeded the original completion date by six days, Hunt necessarily had to exceed it by at least as many days and certainly more, as necessary properly to complete the concrete processes.

 Furthermore, this claim is also based upon the assumption that a liquidated damage clause placed in a contract in order to compensate a party for delay in construction will be enforceable even where the beneficiary of such a provision contributes to the delay or where causes beyond the control of either party contribute to the delay. The proper rule of law is to the contrary, however. There is evidence in the record showing that Parson itself contributed to the delay in completion of the project to a time beyond the original completion date. Much of the delay was caused by bad weather, and this was the reason for the time extension given by the State for the whole project. In these circumstances, and under the authorities cited by respondent Hunt, it would be entirely inequitable to allow Parson to recover against Hunt liquidated damages for delay, especially to an extent greater than that to which Parson itself was held liable by the State.[1]

1. L. A. Reynolds Company v. State Highway Commission, 271 N.C. 40, 155 S.E.2d 473 (1967); Kiewit & Sons' Co. v. Pasadena City Jr. Col. Dist., 59 Cal.2d 241, 28 Cal.Rptr. 714, 379 P.2d 18 (1963);

Barnard-Curtiss Company v. United States, 257 F.2d 565 (10th Cir. 1958); United States v. Texas Construction Company, 224 F.2d 289 (5th Cir. 1955); United States v. John Kerns Const. Co.,

In the alternative, Parson claims consequential damages involved in its having to return to the project in the spring of 1964. Parson contends that but for Hunt's failure to proceed with its joint sealing operation "as the concrete * * * [was] laid," Parson would have been able to complete the project in the fall of 1963. Parson argues that the rather indefinite contractual phrase, "as the concrete is laid," denotes only three days duration as applied to Hunt's joint sealing operation. Parson then conjectures that had Hunt finished its operations by September 24, 1963, the new pavement could have been used by Parson's trucks in the application of asphalt thereafter.

■ Aside from the question whether a contractor may recover consequential damages at all when the contract provides for liquidated damages for delay,[2] the only evidence in this record which might lend some support to Parson's claim was that there was some warm and clear weather in early October, 1963. Parson failed to finish laying concrete until September 21, 1963. As noted above, even before the laying of concrete began, Parson had been told that no asphalt application would be allowed after September 15, 1963, and Parson's only request for a written waiver of this prohibition was denied. Parson made no other requests for waiver of this requirement, which might have been given by the State if the atmospheric temperature were above 50° F. Moreover, the specifications prohibit traffic on new pavement until at least 14 days after it is laid. Thus, Parson's contention that Hunt caused the project to be carried over to the spring of 1964 assumes: (1) that Parson would have again requested waiver of the asphalt application requirement, (2) that there would have been a number of clear working days with temperature above 50° F. after the two week period when traffic is excluded from new pavement sufficient to complete the asphalt shoulders, and (3) that on all of these occasions the State would have reversed its previous refusal to waive the asphalt application requirement. Furthermore, this contention ignores the fact that it was already apparent before concrete began to be laid that the project would have to be carried over to 1964. The district court's findings are in accord with the evidence produced, while this particular claim by Parson is unrealistic and based not on evidence but speculation and conjecture. Thus, even if Hunt did not seal the joints strictly "as the concrete * * * [was] laid," yet Parson failed to show that Hunt's actions in fact caused the project to be carried over to 1964. The district court properly found the evidence to the contrary inasmuch as the three days delay caused by Hunt was far overshadowed by other causative factors, namely, the two months' delay at the start of the project because of bad weather and Parson's own lack of sufficient equipment after the weather cleared.

Finally, the award of attorney fees and interest to Hunt under I.C. § 45–502 is plainly allowed by the statute.

---

140 F.2d 792 (8th Cir. 1944); Great Lakes Construction Co. v. Republic Creosoting Co., 139 F.2d 456 (8th Cir. 1943); Annotation, Liability of Building or Construction Contractor for Liquidated Damages for Breach of Time Limit Where Work is Delayed by Contractee or Third Person, 152 A.L.R. 1349, 1360, 1376–78 (1944); cf. Annotation, Building and Construction Contracts: Prime Contractor's Liability to Subcontractor for Delay in Performance, 16 A.L.R.3d 1252 (1967). The rule applied by these authorities holds that damages for delay will not be apportioned between various contractors; rather, the beneficiary of a liquidated damage clause is barred from any recovery if he contributes in any way to the delay. The implication for the case at bar is that Parson should have recovered no liquidated damages for delay, but, as Hunt has not cross-appealed, the set-off of $750 assessed against Hunt must be upheld.

2. See Coast Sash and Door Co. v. Strom Construction Co., 65 Wash.2d 279, 396 P.2d 803 (1964).

The judgment of the district court is affirmed. Costs to respondent.

McFADDEN, C. J., and DONALDSON, SHEPARD, and SPEAR, JJ., concur.