690 P.2d 947

**B.R. GOODWIN, Verl Goodwin, and Les Hanson, Plaintiffs-Appellants and Cross-Respondents,**

v.

**Elroy WULFENSTEIN and Rex Jackson, dba Jackson Investment Corporation, and Jackson Investment Corporation, a foreign corporation, John Eustler and John Does I through X, Defendants-Respondents and Cross-Appellants.**

No. 13618.

Court of Appeals of Idaho.

Oct. 31, 1984.

Louis F. Racine, Jr., Racine, Olson, Nye, Cooper & Budge, Pocatello, for plaintiffs-appellants and cross-respondents.

Clark Gasser, Green, Service, Gasser & Kerl, Pocatello, for defendants-respondents and cross-appellants.

BURNETT, Judge.

Three unsuccessful plaintiffs in a civil fraud suit have asked us to decide whether the jury was adequately instructed and whether its verdict was supported by the evidence. By cross appeal the defendants have challenged the trial court's refusal to award them attorney fees. For reasons

explained below, we uphold the verdict and the denial of attorney fees.

This suit was brought by a group of investors—B.R. Goodwin, Verl Goodwin and Les Hanson—who lost money in a transaction by which they had hoped to acquire interests in two Montana mines. The purported owner and seller of these mining interests was defendant John Eustler. The investors, through B.R. Goodwin, paid $100,000 to Eustler and agreed to provide additional funding for development of the mines. Goodwin later testified that the agreement with Eustler provided for a small fraction of the $100,000 to be used in paying Eustler's "personal debts" but for the remainder to be used in opening one of the mines. At Eustler's request, the $100,000 payment was made in the form of two checks drawn in favor of third parties with whom Eustler had prior business relationships. A check for $45,000 was made payable to defendant Elroy Wulfenstein; the other, for $55,000, was payable to an investment company controlled by defendant Rex Jackson. Wulfenstein and Jackson subsequently testified that they regarded these payments as incidental to their separate business relationships with Eustler. They denied knowledge of any impropriety in the underlying transaction between Eustler and the investors.

The investors later found that nearly all of the $100,000 had been expended for the personal benefit of Eustler, Wulfenstein and Jackson. The investors also learned that Eustler did not own the two mines in which he purportedly sold interests. The true owner had given Eustler authority, through a power of attorney, to sell interests in these mines; but he had revoked such authority upon learning that Eustler transferred the property into his own name. The true owner brought a successful action to quiet title and his interests in the mining properties were restored.

The investors then brought the present action to recover their money, plus damages, from Eustler, Wulfenstein and Jackson. Eustler defaulted and judgment was entered against him. However, the judgment remained unsatisfied at the time of trial. The question submitted to the jury was whether the investors also were entitled to recover from Wulfenstein and Jackson. The jury said no. Judgment was entered upon the verdict and this appeal followed.

I

The investors contend that the jury was not properly instructed upon the burden of proving fraud and conspiracy nor upon a purportedly separate cause of action for restitution. However, a threshold problem precludes us from addressing these contentions on their merits. The problem is that the appellants have not demonstrated upon the record that they objected to the instructions given by the district court or that they requested other instructions which were refused.

We first consider the lack of objection to the instructions given. Appellants invite our attention to *Evans v. Small*, 94 Idaho 448, 489 P.2d 1404 (1971), and urge that failure to object to the instructions below should not preclude them from challenging those instructions on appeal. *Evans* was decided in 1971, under former I.R.C.P. 51. The rule then provided that "failure to object to any instruction given by the court shall not preclude any party to the action from assigning as error on appeal an erroneous instruction given or any omission by the court to give a proper instruction." Rule 51 subsequently was amended. The pertinent provision now appears in Rule 51(a)(1), adopted in 1977: "[A]ll objections ... to the giving or failure to give an instruction, and any court's ruling thereon, must be made a part of the record."

Under the new rule, objections must be made on the record in order to preserve them for appeal. *See, e.g., Briscoe v. Nishitani*, 105 Idaho 175, 667 P.2d 278 (Ct.App.1983). This rule governs the instant case, which was filed and tried after 1977. Therefore, we are constrained to hold that asserted errors in the instructions given cannot now be raised.

■ We are similarly constrained to hold that failure to request a restitution instruction, on the record, precludes reversal for failure to so instruct. It has long been settled in Idaho that failure to give an instruction in a civil case is not reversible error if such an instruction was not requested. *E.g., Joyce Bros. v. Stanfield,* 33 Idaho 68, 189 P. 1104 (1920).

Here, the appellants' brief informs us that an unnumbered, proposed instruction was submitted to the trial court. However, no requested instructions from either side have been included in the record. Neither does the trial transcript include the jury instruction conference between the court and counsel. No party asked that the conference be reported. Consequently, we do not know whether the instruction in question actually was requested at the conference; nor do we know whether a ruling was obtained. Indeed, during oral argument on appeal, appellants' esteemed counsel acknowledged with laudable candor that trial counsel for both sides appeared to find the court's instructions acceptable when the conference occurred. Under these circumstances we believe that any question relating to the proposed instruction has not been preserved adequately for appellate review. *See Campbell v. Clark,* 283 F.2d 766 (10th Cir.1960) (declining to review proposed instructions quoted in appellants' brief but appearing nowhere in the record); *cf. State ex rel. Hodges v. Hodges,* 103 Idaho 765, 653 P.2d 1177 (1982) (lack of transcript or minutes of trial court proceeding cannot be cured on appeal by post-trial affidavits of counsel). We conclude that the investors have not established error in the jury instructions.

## II

■ The investors next contend that the evidence fails to support the jury's implicit finding that a fraudulent conspiracy among Eustler, Wulfenstein and Jackson had not been proven. When an appeal is taken from a jury verdict the evidence is viewed, and reasonable inferences are drawn, in favor of the verdict. The verdict will be disturbed only if the evidence and the inferences are so clear that reasonable minds could not differ on them. *Quincy v. Joint School District No. 41, Benewah County,* 102 Idaho 764, 640 P.2d 304 (1981). When applying this standard of review we are mindful that the credibility of witnesses and the weight to be given their testimony are matters exclusively within the province of the jury. *E.g., Harper v. Johannesen,* 84 Idaho 278, 371 P.2d 842 (1962).

In this case the investors' proof of a conspiracy was circumstantial. There was no direct evidence that Wulfenstein or Jackson knew the money they received had been fraudulently obtained or that their use of the money would be in furtherance of a fraudulent scheme. The investors urged that such knowledge be inferred from evidence that Eustler, Wulfenstein and Jackson were business associates; that there were meetings and communications from which Wulfenstein and Jackson would have learned how the $100,000 had been obtained and how it was intended to be used; and, finally, that these defendants put the money to no purpose benefitting the investors.

However, Wulfenstein testified that he had understood himself to be an employee of Eustler and the investors, charged with operating one of the mines at a salary of $50,000 per year. He stated that one of his additional responsibilities, as he understood it, was to use part of the $45,000 he received to pay some personal obligations owed by Eustler and to obtain dismissal of criminal charges against Eustler for bad checks. After accomplishing these tasks, with Jackson's assistance, Wulfenstein put the remaining money to his own use and treated it as part of his salary. He testified that he made some efforts in Montana to set up mining operations but that he discontinued his efforts when additional development funds proved not to be forthcoming.

Jackson disclaimed involvement in the transaction between Eustler and the investors. He testified that he thought the $55,000 he received was a payment by Eustler

to reinstate a defaulted interest in an entirely separate mining property where Jackson and Eustler were co-investors. Jackson said he did not know why the source of this money was B.R. Goodwin rather than Eustler himself. However, he stated that this fact had not concerned him.

Upon this evidence the jury well could have inferred the existence of a fraud and conspiracy embracing Wulfenstein and Jackson. In doing so the jury would have chosen to disbelieve protestations by these defendants that they were unaware of any fraudulent scheme. But the jury did not make this choice. The jury, having heard and observed the witnesses, elected instead to find that the alleged conspiracy had not been proven. We decline to disturb this finding. The circumstantial evidence, though highly suggestive, was not so conclusive as to put the matter beyond disagreement among reasonable minds. Therefore, the jury verdict must be upheld.

### III

On cross appeal the defendants have argued that the trial judge should have granted their request for attorney fees under I.C. § 12–121. The trial judge found that the plaintiffs' cause "was not brought and pursued frivolously, unreasonably, or without foundation." Therefore, under I.C. § 12–121 and I.R.C.P. 54(e)(1), the court denied an award of attorney fees. The decision to grant or to deny attorney fees under section 12–121 is committed to the sound discretion of the trial court. We will not overturn that determination unless an abuse of discretion is shown. *Viehweg v. Thompson*, 103 Idaho 265, 647 P.2d 311 (Ct.App.1982). In this case, genuine issues were presented at trial. Consequently, we find no abuse of discretion in denying attorney fees.

The judgment of the district court is affirmed. Costs to respondents, Wulfenstein and Jackson. No attorney fees on appeal.

WALTERS, C.J., and SWANSTROM, J., concur.