850 P.2d 165

**CITY OF IDAHO FALLS, a municipal corporation, Plaintiff–Appellant– Cross Respondent,**

v.

**BECO CONSTRUCTION COMPANY, INC., a corporation, Defendant– Respondent–Cross Appellant.**

No. 18495.

Supreme Court of Idaho, Idaho Falls, September 1992 Term.

Feb. 2, 1993.

Rehearing Denied May 4, 1993.

Anderson, Pike & Bush, Idaho Falls, for plaintiff-appellant-cross respondent. Dale W. Storer argued.

Fuller, Carr & Parry, Idaho Falls, for defendant-respondent-cross appellant. Mark R. Fuller argued.

BISTLINE, Justice.

In May of 1985, the city of Idaho Falls (hereinafter the "City") awarded Beco Construction Co., Inc. (hereinafter "Beco") the contract for the Bel–Aire project which involved the replacement of water lines and associated trenching and street repairs in the Bel–Aire residential subdivision of Idaho Falls. Superior Excavating Company (Superior) performed much of the work for Beco.

During the construction process, numerous disputes arose between Beco and the City over the schedule and performance of the construction. The City contends it was empowered by the contract to control the manner in which Beco performed certain work. For instance, it required Beco to restore water service to nearby residents on a nightly basis. The City also insisted that water main trenches not be left open in excess of forty-eight hours and that no more that 300 feet of water main trench should be open at a time. Other disputes revolved around Beco's obligations regarding traffic control and dust abatement and clean-up measures. Beco responded that many of the City's demands were not authorized by the contract and led to a delay in the contract's completion.

The contract required Beco to complete the work within sixty days of receiving notice to proceed, or be subject to liability for liquidated damages of $200 per day. Beco contended that it had substantially

completed the work before the scheduled completion date and that the City had contributed to the delay. The City believed the work was not substantially completed until seventy days after the scheduled completion date; on that basis, the City withheld liquidated damages of $14,000 from its payment to Beco.

After completing construction, Beco claimed additional compensation for extra labor and materials based on the City's requirement that Beco replace asphalt to match the adjacent asphalt surface thickness, rather than a uniform minimum standard thickness. The City rejected this claim.

During the summer following completion, the City observed settling of the water main trenches and deterioration of the street seal coat. With the earlier disputes over liquidated damages and additional costs still unresolved, further disputes arose over warranty repair of the defective work.

The City then initiated its claim seeking damages for breach of contract due to defective workmanship, together with a declaratory judgment request to allow the City to retain liquidated damages it had withheld. Beco counterclaimed, seeking damages for additional work performed and materials delivered beyond the scope of the contract, and for recovery of liquidated damages based upon its beliefs that it had substantially completed the work by the scheduled completion date and that the City had contributed to the delay.

The jury returned a verdict finding that Beco had breached the contract and awarded the City $12,000 in damages. The jury also found that Beco had performed extra work not required by the contract and thus awarded Beco $14,000 in damages. The jury further found that the City had wrongfully withheld monies as liquidated damages and awarded Beco $1,000 of the $14,000 that had been withheld. The district court entered judgment on the verdict.

Beco filed a motion for judgment n.o.v. on the liquidated damages claim, asking that *all* of the monies withheld by the City be returned. Its motion was based on the premise that the jury found the City had contributed to the delay, then apportioned the liquidated damages and that such apportionment was contrary to Idaho law. The City also filed a motion for judgment n.o.v. or, in the alternative, a new trial on Beco's claim for extra asphalt work. The district court denied both of the City's motions and granted Beco's judgment n.o.v. motion, ruling in accord with Beco's premise that the jury had improperly apportioned liquidated damages. The jury award of $1,000 was vacated, and replaced with an award of $14,000, that being the amount of liquidated damages withheld by the City. The court also awarded both prejudgment and post-judgment interest. Beco's request for attorney fees was denied.

The City filed further post-trial motions to alter the amended judgment and for a conditional new trial, both of which were denied. Beco then sought and obtained a writ of execution for garnishment of a bank account holding city funds. Prior to the writ being executed, the City filed its notice of appeal with this Court. The following issues are raised by the City:

1. Whether the trial court properly instructed the jury on recovery of liquidated damages.

2. Whether it was prejudicial error for the trial court to refuse to admit evidence of actual damages to the City caused by Beco's delay.

3. Whether it was prejudicial error for the trial court to admit into evidence Beco's Exhibit O, a letter from Superior to Beco allegedly documenting additional expenses for asphalt.

4. Whether it was prejudicial error for the trial court to admit into evidence Beco's Exhibit Z, the Grebb affidavit.

5. Whether the trial court erred in finding that the City had waived its right to seek a conditional motion for a new trial under I.R.C.P. 51(a)(1).

Beco cross-appeals, raising these issues:

1. Whether the City's filing of the Notice of Appeal mooted the issue of

execution and garnishment of the city's public funds.

2. Whether the trial court's failure to award attorney fees to Beco was an abuse of discretion.

3. Whether Beco is entitled to attorney fees on appeal.

## I. THE JURY INSTRUCTION ON LIQUIDATED DAMAGES

 The court instructed the jury regarding liquidated damages that:

In order for the defendant [Beco] to recover on its counterclaim for liquidated damages, the defendant has the burden of proving each of the following propositions:

Number one, that the City ... has withheld from monies due Beco, Inc. an amount specified as liquidated damages because Beco failed to complete work in the time allowed in the contract.

*Two, that the City ... contributed to the delay in any way to the completion of the project....*

Tr. Vol. 9 at 2075–76 (emphasis added). The City contends that this instruction was too broad in that the jury was thereby instructed that, in order to recover liquidated damages retained by the City, Beco need only prove that the City contributed to the delay "in any way" regardless of whether its actions were allowed under the contract. Contrawise, the City argues that the trial court should have given its proposed liquidated damages instruction. Beco responds that the instruction as given accurately informed the jury as to Idaho law and that in any event because of its

untimely submission, the district court was not required to consider it.

 Failure to give an instruction in a civil case will not be held reversible error if such an instruction was not requested. *Carpenter v. Double R Cattle Co.*, 108 Idaho 602, 701 P.2d 222 (1985); *Goodwin v. Wulfenstein*, 107 Idaho 492, 690 P.2d 947 (Ct.App.1987). To establish error for failure to give an instruction, it must be shown at a minimum that the giving of the instruction was not opposed by the appellant at trial; the proposed instruction was a correct statement of Idaho law; and the failure to so instruct was assigned as error on appeal. *Carpenter*, 108 Idaho at 606, 701 P.2d at 226.

Regarding the City's requested instruction, the district court in its memorandum decision and order of December 19, 1989, stated that the record was clear that the City had not submitted a written instruction on liquidated damages prior to trial, but had only requested it orally during an instruction conference. Invoking Idaho Rule of Civil Procedure 51(a)(1),[1] the court found that it had not been required to consider the oral request at the jury instruction conference as it was untimely.

Unpersuaded by the district court's characterization of the record, we find that the City's proposed changes to the disputed jury instruction *were* timely submitted, as is evidenced by the events surrounding the disputed instruction. On May 31, 1989, counsel for the parties met with the trial judge in chambers to discuss various matters. The City contends that at that meeting, the judge informed counsel of his dissatisfaction with previously submitted jury instructions on the issue of liquidated dam-

---

**1.** No later than five (5) days before the commencement of any trial by jury, any party may file written requests that the court instruct the jury on the law as set forth in such request, and such requested instructions must be served upon and received by all parties to the action at least five (5) days before the commencement of the trial. The court shall not be required to consider any requested instructions not filed and served upon the parties as required by this rule, but the court may reasonably permit any party to file and serve written requests for instructions at any time up to and including the close of the evidence at the trial upon the

grounds that such requested instructions concern matters arising during the trial of the action which could not reasonably have been anticipated by the party requesting such instructions or were overlooked in the original requested instructions.... The court may also prepare other written instructions to be given of its own motion, and shall submit to the parties the instructions that will be given, and provide adequate time and opportunity to all parties to read and consider said instructions, to discuss them with court and counsel off the record, and to make objections thereto in the absence of the jury....

ages and directed preparation of an instruction satisfactory to both, adding that if such was not possible, the court would draft its own.

Accordingly, the next day at the close of evidence in the case, June 1, the City submitted its proposed instruction to the court, as evidenced by the following exchange:

> THE COURT: All right. The jury has left the courtroom. Your instructions will be ready for you at twelve o'clock, and come back at half past one, we'll have our jury instruction conference, and if there's nothing further we'll see you at half past one. The instructions will be available for you at Marianne's desk. Anything else?
>
> MR. STORER: Your Honor, we have—pursuant to our conversation last night, we have prepared an additional proposed jury verdict form as well as an additional proposed instruction.
>
> THE COURT: I'll be happy to see that. Mr. Fuller do you have anything further?
>
> MR. FULLER: No, Your Honor.
>
> THE COURT: All right. If you'd bring that up, Mr. Burgess, the Bailiff is gone. Very well, I'll take a look at these, and if appropriate, we'll incorporate them in the instructions that are essentially prepared at this time....

Tr. Vol. XI at 2035–36.

Later that same day at the jury instruction conference, the City objected to the court's proposed instruction on liquidated damages which included the "in any way" language, and again requested the instruction be narrowed by adding "by actions not authorized or allowed under the contract, or as a result of its failure, [to] perform some duty it agreed to perform under the contract," referring to its previously submitted written instruction to that effect. Tr. Vol. IX at 2042–43.

The City's assertion that the court directed the parties to prepare alternate liquidated damages instructions is not evi-

denced in the appellate record; although the occurrence of the May 31 meeting is preserved in the record, the actual dialogue was not transcribed. Tr. Vol. VIII at 1981. However, from the recorded exchange occurring on June 1, it is evident that the City did indeed submit to the court its revised liquidated damages instruction and verdict form in writing, the court accepted them and agreed to consider their appropriateness. From the context of that exchange, it appears that the revised instruction had been solicited by the court.

■ The record belies the court's hindsight determination that the City proposed its revised instruction orally only, and forecloses the court's resolution of the issue on a Rule 51(a)(1) "untimeliness" basis. That rule allows the trial court in its discretion to "reasonably permit any party to file and serve written requests for instructions at any time up to and including the close of the evidence at the trial upon the grounds that such requested instructions ... were overlooked in the original requested instructions...." I.R.C.P. 51(a)(1). The court permitted the City to do just that and cannot arbitrarily cite the rule to disallow retroactively what it had already permitted at trial.

In sum, we hold that the City did request that the court's "in any way" liquidated damages instruction be limited; that its submission of an alternate instruction was timely; and that the court in fact did consider it.[2]

We also find that the City's requested instruction was a correct statement of Idaho law. *See Carpenter*, 108 Idaho 602, 701 P.2d 222. We agree with the City that the given instruction was excessively expansive and that the City was entitled to a more focused instruction.

It is apparent from its second memorandum decision and order, dated November 20, 1989, that the court borrowed the "in any way" language used in its given in-

---

2. Further, even if the City had requested the revision orally only, the court allowed revisions to other jury instructions at the same conference when orally requested by the parties. It would be an abuse of discretion for the district court to allow oral revisions to some jury instructions, while retroactively using Rule 51(a)(1) to selectively justify its denial of others as "untimely."

struction from *State v. Jack B. Parson Const.*, 93 Idaho 118, 456 P.2d 762 (1969). *Parson* involved an action by a subcontractor against a general contractor on a highway construction subcontract. This Court held that the general contractor could not recover from its subcontractor for delay under a liquidated damages clause where the general contractor had contributed to the delay by failing to provide adequate equipment. Such conduct was said to constitute a failure by the general contractor to live up to its contractual obligations.

This Court did *not* hold that the beneficiary of a liquidated damages clause is barred from recovery when he or she "contributes *in any way* to the delay." The language from *Parson* that the district court relied upon to justify its jury instruction in the instant case occurs in a footnote. This footnote is dicta, noting what various other jurisdictions accepted as the rule but not necessarily adopting it unconditionally. What this Court actually did in *Parson* was to look for wrongful acts in analyzing whether the beneficiary of the liquidated damages clause had contributed to the delay in the completion of the contract, concluding that "*[i]n these circumstances* and under the authorities cited by [respondent], it would be entirely inequitable to allow [appellant contractor] to recover against [respondent subcontractor] liquidated damages for delay...." *Parson*, 93 Idaho at 120, 456 P.2d at 764. (Emphasis added.)

In the case before us, whether the contract allowed the City to make certain requests regarding Beco's performance of the contract was a hotly contested issue relative to which substantial evidence was presented. Determination of these issues was crucial to concluding whether the City had justifiably withheld liquidated damages from Beco.

Thus, we hold that the language in the given instruction in the instant case was overly broad. The City was entitled to an instruction recognizing its right to take actions authorized by or allowed under the contract without forfeiting liquidated damages and permitting the jury to distinguish between such conduct as opposed to a failure to perform a contractual duty, or action taken in contravention of contractual terms. This holding is consistent with *Parson*, because as stated above, it was a wrongful act for the general contractor in *Parson* to fail to provide sufficient equipment to execute the work, and it was that action that caused delay.

## II. ACTUAL DAMAGES

A jury properly instructed on liquidated damages may still find that the City contributed to the delayed completion of the project. Under such circumstances, the City is deemed to forfeit liquidated damages. The City contends, in the alternative, that the trial court should have allowed it to present evidence at trial showing the actual damages it suffered due to Beco's alleged delay. In support of its claim for actual damages, the City unsuccessfully attempted to introduce Exhibit 14, a computer printout of the city's labor and equipment costs incurred during the time for which it had assessed liquidated damages against Beco. Beco claims that *Parson* precludes the City's recovery of actual damages in lieu of liquidated damages, and that Exhibit 14 was properly excluded.

### A. The City's Ability to Collect Actual Damages

We disagree with Beco's assertion that an alternative recovery of actual damages would be contrary to the law established in *Parson*. In fact, the issue of alternative recovery was never directly faced, as evidenced by the following passage from *Parson*:

*Aside from* the question whether a contractor may recover consequential damages at all when the contract provides for liquidated damages for delay, [footnote omitted] the only evidence in this record which might lend some support to Parson's claim was that there was some warm and clear weather in early October, 1963.

*Parson*, 93 Idaho at 121, 456 P.2d at 765 (emphasis added) (footnote deleted).

The factual circumstances in *Coast Sash & Door Co. v. Strom Const. Co.*, 65

Wash.2d 279, 396 P.2d 803 (1964) (that being the omitted footnote), clearly distinguish it from the instant situation. In *Coast*, also a construction contract case, the contract provided that should the owner assess liquidated damages against the general contractor for delay caused by the subcontractor's failure to timely perform, the subcontractor would pay the assessed amount. The subcontractor failed to complete its performance within the requisite time; however, the general contractor was still able to timely complete and the owner assessed no liquidated damages. The general contractor withheld $1700 from its payment to the subcontractor as actual damages it incurred from the subcontractor's untimely performance. The subcontractor brought suit to recover the $1700 and the general contractor counterclaimed for actual damages.

The Washington Supreme Court refused to "rewrite" the parties' contract to allow the general contractor to recover actual damages against the subcontractor, but not because of the mere existence of a liquidated damages clause. The contract also contained a provision that "The Contractor agrees ... to make no demand for liquidated damages or penalty for delay in any sum *in excess of such amount as may be specifically named in the subcontract.*" *Coast*, 65 Wash.2d at 280, 396 P.2d at 804. It was on the basis of that term that the court disallowed consequential damages. The contract between the City and Beco contains no such limiting term, and hence, recovery of actual damages can be allowed without impinging on the parties' contractually expressed intentions.

This Court has heretofore held that where the liquidated damages clause in the parties' contract was unenforceable as a penalty, "the damages allowable are those which the law provides for breach of the contract as though no such provision had been inserted therein." *Graves v. Cupic*, 75 Idaho 451, 459, 272 P.2d 1020, 1025 (1954) (*citing Perkins v. Spencer*, 121 Utah 468, 243 P.2d 446 (1952)).

Beco argues that an alternative recovery of actual damages is allowed where the liquidated damages provision has been found to be unenforceable as a penalty, but not where the beneficiary has forfeited his entitlement to the benefits of the provision. This contention is not persuasive. We see no reason to distinguish between the two situations. Beco's proposed rule is unduly harsh and restrictive and if applied would inequitably penalize parties who had the foresight to attempt to simplify a potential breach situation by contractually providing for liquidated damages.

In light of the discussion above in Parts I and IIA, we vacate the judgment n.o.v. in favor of Beco and remand for a new trial with directions to: 1) use the City's requested instruction as to liquidated damages; and 2) allow testimony and other evidence relative to the City's actual damages, instructing the jury accordingly.

Insofar as the other issues the parties raise, many of the same issues will arise on remand. On an appeal, this Court "shall pass upon and determine all the questions of law involved in the case ... and necessary to the final determination of the case." I.C. § 1–205; *Robertson v. Richards*, 115 Idaho 628, 632, 769 P.2d 505, 509 (1989). We thus address each remaining issue in turn.

## B. The City's Exhibit 14

■ The City attempted to introduce Exhibit 14, which consisted of a computer printout of the city's labor and equipment costs incurred during the time for which it had assessed liquidated damages against Beco. Beco objected to its admission on the basis that it lacked foundation and that it was a summary within the contemplation of I.R.E. 1006 for which the City had failed to provide underlying documentation. The court sustained Beco's objection. On the City's further assertion that Exhibit 14 was a business record, not a summary, Beco's objection was again sustained.

■ Although a trial court has broad discretion regarding the admission of evidence, exercise of that discretion will be overturned in cases of abuse. *E.g., Cheney v. Palos Verdes Inv. Corp.*, 104 Idaho 897, 665 P.2d 661 (1983). We find that it

was an abuse of discretion not to admit Exhibit 14 under the business record exception to the hearsay rule.

First, it is necessary to contend with Beco's objection that Exhibit 14 is a summary as defined by Idaho Rules of Evidence 1006. This rule states, "The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation." It continues, "The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at a reasonable time and place."

However, Beco in particular should be familiar with a certain decision of this Court, which neither party cites in regard to Exhibit 14. In *Beco Corp. v. Roberts & Sons Const. Co.*, 114 Idaho 704, 760 P.2d 1120 (1988), *overruled on other grounds, Houghland Farms, Inc. v. Johnson*, 119 Idaho 72, 803 P.2d 978 (1990), this Court held in regard to an almost identical exhibit that the business record exception to hearsay is a more appropriate analysis than the summary analysis. *Beco v. Roberts*, 114 Idaho at 710–11, 760 P.2d at 1126–27 (1988). A key issue to determining whether proffered evidence constitutes a summary within I.R.E. 1006 is whether such a printout is prepared in anticipation of litigation. *See, e.g., U.S. v. Shyres*, 898 F.2d 647, 657 n. 5 (8th Cir.1990) ("[w]e doubt that the document constituted a summary, inasmuch as [the co-conspirator] prepared it in furtherance of the conspiracy, *not in preparation for trial*" (emphasis supplied)), *cert. denied*, 498 U.S. 821, 111 S.Ct. 69, 112 L.Ed.2d 43 (1990).

When Beco objected to Exhibit 14 on the basis that Idaho Falls did not conform to I.R.E. 1006, Idaho Falls called Chad Stanger, Director of the Division of Public Works for the City, to lay a foundation for admissibility. Stanger testified, *"As the daily time cards for each employee are filed in the office,* the secretary places

those in the computer." Tr.Vol. VIII, p. 1933 (emphasis added). He continued to testify that the printout was prepared as a part of regularly conducted activities and that the time cards were entered into the computer on a regular basis. *Id.* Furthermore, no evidence exists establishing that the reports were prepared in anticipation of litigation. Hence, it is appropriate to analyze Exhibit 14 under the business record exception to the hearsay rule, see I.R.E. 803(6), rather than as a summary, since it is clear that the printout was not made with an eye towards presentation at trial.

Although the Court did follow the I.R.E. 1006 analysis, Exhibit 14 could still have been excluded as inadmissible hearsay, since it was a "statement ... offered in evidence to prove the truth of the matter asserted." *See* I.R.E. 801. The following requirements must be met for admissions as a business record under I.R.E. 803(6):

> Records of regularly conducted activity. A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness....

I.R.E. 803(6). *See also Beco Corp. v. Roberts & Sons Const. Co.*, 114 Idaho 704, 760 P.2d 1120 (1988) (neither should the document have been prepared in anticipation in trial).[3]

Again, *Beco v. Roberts*, which affirmed admission of evidence under the business record exception, controls; the content of Stanger's testimony is essentially identical to that of Beco's witness in the *Beco v. Roberts* case. Stanger testified that the

---

**3.** *Beco v. Roberts* sets forth no requirement that the proponent of evidence lay a foundation that the evidence was *not* prepared in anticipation of litigation, since the Court upheld the admission of evidence even though the proponent's expert did not testify to this effect. *Id.,* 114 Idaho at 711, 760 P.2d at 1127.

computer summary was prepared in the course of regularly conducted activities, by a secretary who entered information from the employees' daily time cards regarding time spent on the Bel–Aire project and that such summaries were prepared on a regular basis. From those direct labor costs, the equipment costs from the same period were extrapolated. He also testified that the document itself, Exhibit 14, was indeed an accurate reflection of the information entered into the computer. Finally, as discussed above, it is clear that these records were not prepared in anticipation of litigation but were routinely culled from time cards in the regular course of business.

This testimony constituted adequate foundation for the admission of Exhibit 14 as a business record, and the exhibit should be admitted on remand for further proceedings.

### III. BECO'S EXHIBIT O

■ The next issue on appeal is whether the district court erred in admitting into evidence Beco's Exhibit O. Exhibit O is a letter written by Robert Thompson of Superior Excavating Co., to Jack Grebb of Beco, itemizing Superior's costs on the project for asphalt, equipment, labor, overhead, and profit. Beco asked that the exhibit be admitted in support of its counterclaim for compensation for additional work required by the City which was beyond the scope of the contract, namely, patching the asphalt over the water line trenches to match the existing asphalt paving thickness. The City contends that Beco's Exhibit O was improperly admitted because it is a summary under Rule 1006, and Beco failed to produce the underlying documents from which it was summarized, as required by the rule. Beco maintains that the trial court properly admitted Exhibit O as a business record under Rule 803(6).

Beco, however, misconstrues the record; the court below did not specifically admit Exhibit O as a business record but simply overruled the City's objection as to lack of foundation for admission as a summary, presumably under Rule 1006. Again, as discussed above in Part IIB, the key to whether an exhibit is a summary under Rule 1006 is whether it is prepared in anticipation of trial. Since the court's basis for admitting the evidence was not explicit, if Exhibit O is offered on remand, the court should determine first if it falls within I.R.E. 1006. If the exhibit is a summary, the underlying documents which have been summarized must also be admissible, *State v. Barlow*, 113 Idaho 573, 576, 746 P.2d 1032, 1035 (Ct.App.1987), and Beco must fulfill the procedural requirements of I.R.E. 1006 for the evidence to be admissible. If upon remand the court determines that Exhibit O is not a summary, Beco will still need to lay an adequate foundation to fulfill the requirements of a hearsay exception, since the letter is clearly hearsay.

### IV. BECO'S EXHIBIT Z

We also decide whether the district court erred in admitting Beco's Exhibit Z as a public record under I.R.E. 902(4) and under certain other exceptions to the hearsay rule described in I.R.E. 804.

Exhibit Z is an affidavit prepared by Beco's counsel in support of a pre-trial summary judgment motion. It contains statements of Jack Grebb, employed by Beco as project manager on the Bel–Aire project. Mr. Grebb unfortunately died before trial without having been deposed. His statements were directed primarily toward the issue of delay.

#### A. Admissibility Under I.R.E 804(b)(1)

■ The district court relied on I.R.E. 804(b)(1) for admission of Exhibit Z:

(b) Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

(1) Former testimony. Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, *if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar mo-*

*tive to develop the testimony by direct, cross, or redirect examination.* (Emphasis added).

Although the rule does not expressly mention affidavits, it does exclude former testimony developed exclusively by one of the parties. The Grebb affidavit was not the product of a proceeding wherein the City or a predecessor in interest had an opportunity to develop its contents through direct, cross, or redirect examination.

The district court failed to recognize the subjective viewpoint inherent in the Grebb affidavit. The affidavit was produced solely from unrefuted statements by Grebb, selected by Beco's counsel as persuasive support for Beco's counterclaim and its summary judgment motion. As such, it is far too biased to be admissible under this rule.

## B. Admissibility Under I.R.E 804(b)(5)

[10] The district court also relied on I.R.E. 804(b)(5) for admission of the Grebb affidavit:

Other Exceptions. A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the declarant.

The statement must meet all three requirements of the rule in order to qualify as an exception; the Grebb affidavit, however, fails in respect to subsection (B).

Beco could have, through reasonable efforts, procured witnesses to offer testimony just as probative on the points offered by the affidavit. Most of the statements in the affidavit are of a general scope that do not display a unique or particular knowledge possessed only by Grebb regarding the issues presented. Any other person with knowledge of Beco's management or administration of the Bel–Aire project could have offered very similar statements as testimony at trial. For example, Robert Thompson, owner of Superior, and Doyle Beck, owner of Beco, both testified at length at trial and both were in a position to testify on the points offered by the Grebb affidavit.

Besides the points on which Beck or Thompson could have testified, there was only one other point for which the affidavit amounted to evidence. It contained Grebb's statement averring the accuracy of a phone memo he had prepared. However, the phone memo was admitted into evidence separately from the affidavit, as a business record. Thus the Grebb affidavit was not the most probative evidence that Beco could have procured through reasonable efforts as to the points for which it was offered.

Moreover, I.R.E. 804(b)(5) further requires "equivalent circumstantial guarantees of trustworthiness." As explained above in the discussion regarding the affidavit's admissibility under I.R.E. 804(b)(5), the affidavit displayed little guarantee of trustworthiness. We thus conclude that the district court erred in admitting the Grebb affidavit under Rule 804(b)(5).

## C. Admissibility Under I.R.E. 902(4)

■ The district court also erroneously relied on the fact that the affidavit, as part of the defendant's motion for summary judgment, had become part of the court record, and thereby attaining a degree of authenticity sufficient for admission under I.R.E. 902(4):

Self-authentication. Extrinsic evidence of authenticity as a condition precedent

to admissibility is not required with respect to the following:

> (4) Certified copies of public record. A copy of an official record or report or entry therein, or of a document authorized by law to be recorded or filed and actually recorded or filed in a public office, including data compilations in any form, certified as correct by the custodian or other person authorized to make the certification....

By its express language, this rule comes into play when the *authenticity* of official public records, or data compilations recorded in a public office is called into question. The authenticity of Grebb's affidavit is not at issue here for it has been signed by Grebb, and acknowledged before a notary, and no objection is raised that it is not an authentic affidavit of his statements. It is the admissibility as *hearsay*, not its authenticity, that is at issue. Reliance on Rule 902(4) for admission of the Grebb affidavit as a public record was a misapplication of the rule and a mistaken attempt to "bootstrap" the evidence into admissibility. Rule 901 also applies to the issue of authenticity and would also be inapplicable as a basis for admission of the affidavit.

In further proceedings on remand, the Grebb affidavit should not be admitted under Rule 804(b)(5), Rule 901, or Rule 902(4).

### V. BECO'S ABILITY TO LEVY EXECUTION AND GARNISH CITY FUNDS

We now consider whether the trial court may properly issue a writ of execution against the City if the identical situation arises upon remand. For the following reasons, we hold that the trial court may not do so.

We note that I.R.C.P. 69 allows enforcement of an appealable final judgment by writ of execution. However, I.C. § 50–217 provides that "[t]he city council shall have power to order paid any final judgment against such city, but none of its lands or property of any kind or nature, taxes, revenues, franchises, rates or interest shall be attached, levied upon or sold in or under any process whatsoever." A "writ of execution" is a "formal process issued by a court generally evidencing the debt of the defendant to the plaintiff and commanding the officer to take the property of the defendant in satisfaction of the debt...." Black's Law Dictionary 510 (5th ed. 1979).

This "formal process" is contrary to the directive of I.C. § 50–217. Allowing the general rule of I.R.C.P. 69 to take precedence over I.C. § 50–217 would nullify its effect, and we will not interpret a statute to reach such a result. *E.g., Walker v. Nationwide Fin. Corp. of Idaho*, 102 Idaho 266, 629 P.2d 662 (1981). Neither will we presume that the legislature would enact a superfluous statute. *Id.* Moreover, when two statutes are in conflict with each other, the more specific statute must prevail. *Mickelsen v. City of Rexburg*, 101 Idaho 305, 612 P.2d 542 (1980).

Accordingly, I.C. § 50–217 precludes Beco from executing on an Idaho Falls bank account. As Beco recognizes, allowing the judgment creditor to execute against public monies would have potentially disastrous consequences, divesting the city council of its statutory power to determine from which funds a judgment should be drawn.

### VI. BECO'S REQUEST FOR ATTORNEY FEES

On cross-appeal Beco asks this Court to decide whether the trial court erred in failing to award Beco attorney fees as the dominant or prevailing party. Beco also requests an assessment of attorney fees against the City on its appeal to this Court.

Because we vacate the judgment n.o.v. and remand for further proceedings, there was no clearly prevailing party in the trial court proceedings; hence no fees are awarded.

### CONCLUSION

By virtue of our resolution of the case, it is unnecessary for us to decide whether the district court erred in finding that the city had waived its right to seek a conditional motion for a new trial under I.R.C.P. 50(c).

In sum, we vacate the judgment n.o.v. in favor of Beco, and remand for a new trial with directions to utilize the City's requested jury instruction on liquidated damages, and allow the City to present evidence on actual damages as an alternative recovery. We further hold that Exhibit 14 should be admitted as a business record, and that Exhibits O and Z were improperly admitted.

Costs on appeal are awarded to the City. Because the City did not request attorney fees on appeal, we do not award them.

BAKES, C.J. and WINMILL, J., Pro Tem, concur.

JOHNSON, Justice, concurring and dissenting.

I concur in the Court's opinion, except part I (The Jury Instruction on Liquidated Damages) and part II(B) (The City's Exhibit 14). As to these parts, I respectfully dissent.

In my view, *Parson* controls the question presented concerning the liquidated damage instruction, and I would affirm the instruction given by the trial court.

In my view, the trial court correctly rejected Exhibit 14. The exhibit was a summary admissible pursuant to I.R.E. 1006 if the original documents had been made available for examination or copying, or both. The trial court sustained objection to the exhibit on the ground the original documents had not been made available. On appeal, the city states the issue with regard to this exhibit as follows:

2. Did the court err in ruling that Plaintiff's Exhibit 14, a computer printout of information placed into an electronic computer memory, was a summary as contemplated by I.R.E. 1006?

Appellant's Brief, 10.

The city did not attempt to justify the admissibility of the exhibit pursuant to I.R.E. 803(6). Therefore, the Court should not address this question.

McDEVITT, J., concurs.